469 F.Supp. 666 (1978)
In the Matter of GRAND JURY which presented CRIMINAL INDICTMENTS 76-149 AND 77-72 IN the MIDDLE DISTRICT OF PENNSYLVANIA.
Misc. No. 78-176.
United States District Court, M. D. Pennsylvania.
November 14, 1978.
*667 John F. Stoviak, Dilworth, Paxson, Kalish, Levy & Kauffman, Philadelphia, Pa., for Blue Coal Corp.
Solomon Fisher, for Reading Anthracite Coal Co.
Leon H. Kline, Philadelphia, Pa., for Glen Burn Colliery, Inc.
Edwin P. Rome, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for Greenwood Stripping Corp. and Lehigh Navigation-Dodson Co.
Morey M. Myers, Gelb & Myers, Scranton, Pa., for Lehigh Valley Coal Sales Company, Inc.
Jacob Kossman, Philadelphia, Pa., for William R. Dougan.
Joseph A. Quinn, Jr., Hourigan, Kluger & Spohrer Associates, Wilkes Barre, Pa., for Joseph A. Frank.
A. Richard Caputo, Shea, Shea & Caputo, Wilkes Barre, Pa., for Carl J. Tomaine.
Raymond W. Bergan, Lawrence Lucchino, Williams & Connolly, Washington, D. C., for James J. Tedesco.
Bernard J. Brown, Carbondale, Pa., for Thomas J. Gillen.
John Shearburn, Atty., Antitrust Div., Dept. of Justice, Commonwealth of Pennsylvania, Harrisburg, Pa., George N. Gilkerson, Jr., Freeman, Rothe, Freeman & Salzman, Chicago, Ill., for petitioner, Commonwealth of Pennsylvania.
John J. Hughes, Antitrust Div., U. S. Dept. of Justice, Philadelphia, Pa., for the United States Government.
Robert W. DeVos, Jr., Bergson, Borkland, Margolis & Adler, Washington, D. C., for Great Lakes Carbon, Aluminum Co.
H. Kenneth Kudon, Danzansky, Dickey, Tydings, Quint & Gordon, Washington, D. C., for Joseph A. Frank and Beltrami Enterprises.
Richard P. McElroy, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for Greenwood *668 Stripping Corp. and Lehigh Navigation-Dodson Co.

MEMORANDUM
HERMAN, District Judge.
Through this petition the Commonwealth of Pennsylvania, Plaintiff in a pending treble damage action, seeks the production of grand jury materials from the related criminal antitrust actions under Rule 6(e) of the Federal Rules of Criminal Procedure. The background shows that on November 19, 1976 a federal grand jury returned an indictment in this district charging six corporations and three individuals with a conspiracy to fix the prices of anthracite coal.[1]United States v. Blue Coal Corp., et al., Crim. No. 76-149 (M.D.Pa.). All of these Defendants were permitted to enter pleas of nolo contendere on January 20, 1977, with the exception of one individual against whom charges were dismissed because of his poor health. On June 2, 1977 additional indictments were obtained against two individuals, James J. Tedesco and Thomas J. Gillen. United States v. Tedesco and Gillen, 441 F.Supp. 1336 (M.D.Pa.). Defendant Tedesco pled nolo contendere on December 27, 1977 and Defendant Gillen elected to be tried without a jury and was subsequently found guilty of violating Section 1 of The Sherman Act, 15 U.S.C. § 1 on June 21, 1978. On July 22, 1977 this Court entered an order on application of the United States of America releasing to these two individual Defendants "copies of all grand jury transcripts relating to this case, only for the preparation and trial of this case".
On February 22, 1977 the Commonwealth of Pennsylvania filed a civil complaint for treble damages in the Eastern District of Pennsylvania. The complaint named as Defendants all of the parties that were named in the criminal antitrust action of Blue Coal Corporation, but neither Defendant Tedesco nor Gillen from the other separate criminal action.[2] Numerous other civil antitrust actions were commenced against the various anthracite coal companies and individuals and all of the civil antitrust actions were consolidated for purposes of pre-trial discovery before Judge Muir of the Middle District. In re Anthracite Coal Antitrust Litigation, 436 F.Supp. 402 (Jud.Pan.Mult. Lit.1977).
The six corporate Defendants of Criminal Action No. 76-149 stipulated to the release of their grand jury documents and Plaintiffs have inspected and copied these materials.[3] In this petition the Commonwealth of Pennsylvania seeks to have this Court direct the Antitrust Division of the United States Department of Justice to produce for inspection and copying:
1. All documents submitted by third parties to the The Department of Justice pursuant to grand jury subpoenas or voluntarily in connection with the investigation which led to the indictment in United States v. Blue Coal Corporation, Criminal No. 76-149 (M.D.Pa.), and/or United States v. Tedesco, 441 F.Supp. 1336 (M.D. Pa.).
2. All transcripts of grand jury testimony which were adduced in connection with the investigations, and

*669 3. All subpoenas issued in the aforesaid grand jury investigations.
The Department of Justice does not object to the release of the materials, however, numerous civil corporate defendants and witnesses before the grand jury have raised objections to the release of the grand jury materials. All interested parties have been notified of the Commonwealth's petition and two hearings have been held for the purpose of receiving objections and hearing arguments.[4]
After giving considerable thought to the balance that must be struck between the time-honored principle of grand jury secrecy and that of disclosure, I have decided that the indispensable secrecy of grand jury proceedings, at this point, must remain intact. The standard that has been applied in this case is the one set forth in United States v. Procter and Gamble, 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), that the secrecy of grand jury proceedings will not be broken unless a compelling and particularized need is shown. See City of Philadelphia v. Westinghouse Electric Corporation, 210 F.Supp. 486, 489 (E.D.Pa.1962); Philadelphia Electric Co. v. Anaconda American Brass Co., 41 F.R.D. 518, 520 (E.D.Pa.1967); ABC Great Stores, Inc. v. Globe Ticket Company, 309 F.Supp. 181 (E.D.Pa.1970); Texas v. United States Steel Corporation, 546 F.2d 626, 630 (5th Cir. 1977); cf. Baker v. United States Steel Corporations, 492 F.2d 1074 (2d Cir. 1974). The Commonwealth of Pennsylvania has failed to carry its burden in showing either that its need is compelling or that its need can be particularized. In effect, it seeks the wholesale production of all grand jury transcripts, documents, and subpoenas as an aid to discovery, but usefulness and relevancy are insufficient to override the strong and traditional policy requiring secrecy.
The Commonwealth relies on a number of recent decisions that have allowed disclosure of grand jury materials to plaintiffs in treble-damage antitrust actions. Particularly, it relies on Illinois v. Sarbaugh, 552 F.2d 768 (7th Cir.), cert. denied sub nom., J. L. Simmons Co. v. Illinois, 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977) and Petrol Stops Northwest v. United States, 571 F.2d 1127 (9th Cir.), cert. granted, 437 U.S. 902, 98 S.Ct. 3087, 57 L.Ed.2d 1132 (1978), however, these cases are inapposite as the key factor in both was the disclosure of the grand jury materials to the opposing side. The inequitable result of one side having exclusive access to a storehouse of relevant information that has led courts such as Sarbaugh and Petrol Stops[5] to permit disclosure of grand jury materials is simply absent in the present case.
The Commonwealth argues that once one or more of the Defendants are permitted to inspect the grand jury materials the secrecy surrounding the proceedings is breached and that justice requires equal access for it. As noted previously, only two individuals have had access to the materials, now sought by the Commonwealth of Pennsylvania, Mr. Tedesco and Mr. Gillen, neither of whom is a defendant in the pending civil action. The Commonwealth seeks to support its argument by pointing out that Mr. Tedesco and Mr. Gillen were presidents of seven of the civil action corporate defendants and urge upon this Court that any knowledge and information received by these two individuals must be imputed to the seven corporations and thereby to all of the civil defendants. A number of reasons support the opposite conclusion: neither *670 Mr. Gillen's nor Mr. Tedesco's separately retained counsel have ever entered an appearance on behalf of any of the other criminal defendants or any of the civil defendants in the civil antitrust actions; any knowledge or information received by the two individual defendants was not received while acting in the course of their employment, and most importantly, the order releasing the grand jury transcript specifically restricted the use to preparation for trial in the two individual criminal cases. The Commonwealth has offered no proof that any of the civil defendants have had access to the grand jury and all objecting corporate parties at the hearings held on this matter have absolutely denied that they have had any access to the materials. We will not assume that an order of this Court was violated by the disclosure of the grand jury transcripts to other defendants in either the civil or criminal actions and therefore the civil parties are considered to be on equal footing with respect to what transpired before the grand jury.[6]
The Commonwealth asserts that it has made the sufficient showing of compelling necessity on two bases. First, it argues a compelling need exists for using the grand jury testimony to impeach witnesses, to refresh their recollections, and to test their credibility. Second, it asserts as a well established principle that the invocation of the Fifth Amendment by witnesses at proceedings in connection with the civil antitrust cases establishes a particularized need for the release of their grand jury testimony and that eight witnesses in this case have relied on the privilege.
Concerning the first argument, it is a correct statement that many courts find disclosure to be proper if the grand jury material is needed for purposes such as impeaching a witness or refreshing recollections. The problem with the Commonwealth's position is that it has failed to show a particularized need. For example, in Petrol Stops, plaintiff showed that some of the answers defendants made to its interrogatories might contradict the charges in the indictment and pointed out inconsistencies between the government's bill of particulars and statements made in depositions, 571 F.2d at 1131, and in Illinois v. Harper and Row Publishers, Inc., 50 F.R.D. 37, 42 (N.D.Ill.1969), the particularized need was found in discrepancies and memory failures of certain witnesses.[7] In short, the Commonwealth has failed to particularize its request by showing exigent circumstances, but rather seeks an overbroad unparticularized general discovery type disclosure similar to the one rejected in Texas v. United States Steel Corporation with the statement: "It is to be whole hog or none, and none it is." 546 F.2d at 631.
The second asserted showing of particularized need because of witnesses invoking the Fifth Amendment in the treble damage action is likewise unpursuasive. In support of this argument, Plaintiff cites one case, United States v. Borden, Inc., 1976-1 Trade Cas. §§ 61,177 at 70,341-342 (D.Ariz. 1976). The criminal proceeding in Borden terminated with pleas of nolo contendere by all defendants and subsequently in the civil action fourteen individuals who had previously testified before the federal grand jury refused to answer questions at depositions on the basis of the Fifth Amendment. After plaintiffs unsuccessfully sought to compel the deposition testimony, the court ordered the disclosure of the grand jury transcripts of the fourteen witnesses. The facts of Borden are distinguishable from the instant case.
*671 First, of the eight witnesses who have invoked their Fifth Amendment privilege against self-incrimination, five have already testified publicly at the trial of Thomas Gillen and the transcripts of the trial have been inspected and copied by the Commonwealth. Therefore, unlike Borden, the Commonwealth has not reached a dead-end with respect to testimony concerning the alleged conspiracy. Second, we are aware of no effort by the petitioner in seeking to compel the testimony of any of the deposition witnesses who have invoked the Fifth Amendment. Without deciding whether the Borden decision arrived at the proper holding under the special circumstances of that case, it is enough to say that the Commonwealth has not shown a compelling need for transcripts of even these eight individuals who have invoked the Fifth Amendment.
Finally, the Commonwealth seeks to have the grand jury transcripts released on the basis of Section 4F(b) of the Hart-Scott-Rodino Antitrust Improvement Act of 1976, 15 U.S.C. § 15f(b) which provides that the Attorney General of the United States shall assist the State Attorney General by making "available to him, to the extent permitted by law, any investigative files or other materials which are or may be relevant or material to the actual or potential cause of action under this Act". (emphasis added). The parties objecting in the instant case have argued that the amendment is restricted to parens patriae actions brought by a state attorney general on the behalf of the citizens of the state and that it does not apply to the Commonwealth whose civil action is only on behalf of itself. While this appears to be the intent of the drafters, it is not necessary to resolve this question as we do not read "investigative files or other materials" as including grand jury materials nor do we believe the statute was intended to repeal Rule 6(e) or the time-honored policy of grand jury secrecy.
In discussing the above arguments of the Commonwealth, we have not made any distinction between the various materials it seeks from the grand jury. Some courts have stated that the policy of grand jury secrecy has a more limited application to subpoenaed documents than it does to grand jury transcripts. see e. g., Illinois v. Sarbaugh, 552 F.2d at 772, n. 2; In re Grand Jury Investigation of Uranium Industry, Misc. No. 78-0193 (D.C.D.C. November 1, 1978), however, the better view is to treat "the names of witnesses subpoenaed to testify, as well as documents subpoenaed and used by them in their deliberations, [as] matters "occurring before the grand jury". In re California, 195 F.Supp. 37, 40 (E.D.Pa. 1961); In re Grand Jury Proceedings, 309 F.2d 440 (3d Cir. 1962); Corona Construction Co. v. Ampress Brick Co., Inc., 376 F.Supp. 598 (N.D.Ill.1974); Texas v. United States Steel Corporation, 546 F.2d 626 (5th Cir. 1977). The traditional policy of grand jury secrecy and Rule 6(e) of the Federal Rules of Criminal Procedure both require that all matters occurring before the grand jury be treated similarly. As stated in Corona Construction Co., "[T]he grand jury as a public institution serving the community might well suffer if those testifying or submitting documents today knew that the secrecy of their testimony or evidence would be lifted tomorrow" 376 F.Supp. at 600-01; see United States v. Procter and Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). To release the names of those who testified would likely lead to intimidation of future grand jury witnesses who may be reluctant to aid the grand jury in its important function. The documents submitted to the grand jury are within the cloak of secrecy and the Commonwealth has not met its burden in showing that it cannot secure the documents by other means, nor has it sufficiently particularized its request.
In summary, the Commonwealth has failed to overcome the strong policy that "[s]ecrecy must . . . prevail in the absence of particular compelling need." Philadelphia v. Westinghouse Electric Corp., 210 F.Supp. 486, 489 (E.D.Pa.1962). We recognize that it may, however, be able to make a sufficient showing at some later *672 point. If during the subsequent civil trials it is obvious that the witness is either hostile or forgetful, the needs of justice may then require that limited portions of grand jury testimony be made available to show inconsistencies or to refresh recollections of a particular witness. Therefore the United States Department of Justice shall retain grand jury materials until further order of this Court.
NOTES
[1] The nine defendants of Crim. No. 76-149 were: Blue Coal Corporation; Glen Burn Colliery, Inc.; Greenwood Stripping Corporation; Lehigh Navigation-Dodson Company; Lehigh Valley Coal Sales Company, Inc.; Reading Anthracite Coal Company; William R. Dougan; Joseph A. Frank, and Carl J. Tomaine.
[2] By opinion filed November 3, 1978, Judge Muir denied the Commonwealth's motion for leave to add these two individuals along with others.
[3] Defendants in the Commonwealth of Pennsylvania's civil action other than those named in Criminal Action No. 76-149 are: Carbondale Coal Company; Farragut Anthracite Company; Pocono Fuels Company; Reading Anthracite Company; Pagnotti Enterprises, Inc.; Pagnoff Coal Company; Lehigh Valley Anthracite, Inc.; and Jeddo-Highland Coal Company.
[4] The Commonwealth has not raised the issue of standing as to the objecting parties and therefore any objection is considered waived. See, United States v. American Oil Co., 456 F.2d 1043 (3d Cir. 1972); contra, Illinois v. Sarbaugh, 552 F.2d 768 (7th Cir. 1977); Petrol Stops Northwest v. United States, 571 F.2d 1127 (9th Cir. 1978).
[5] See also, U. S. Industries, Inc. v. United States District Court, 345 F.2d 18 (9th Cir.), cert. denied, 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed.2d 62 (1965); In re Cement Concrete Block, 381 F.Supp. 1108 (N.D.Ill.1974).
[6] Even when all corporate defendants have obtained transcripts of the testimony of its own employees under Fed.R.Crim.P. 16(a)(1)(A), automatic discoverability in civil proceedings does not necessarily follow as it has been noted that this "would restrict unduly the corporation's use of the criminal defense tool which Congress saw fit to grant." Texas v. United States Steel Corp., 546 F.2d at 630.
[7] See also, ABC Great Stores, Inc. v. Globe Ticket Company, 309 F.Supp. 181, 182 (E.D.Pa. 1970) in which Judge Fullam explains the particularized need that must be shown under the Procter and Gamble standard for the release of grand jury materials.