**Petition of the UNITED STATES FOR the DISCLOSURE OF GRAND JURY MATTERS (MILLER BREWING COMPANY).**

No. 80–Misc. 40.

United States District Court,
E. D. Wisconsin.

June 23, 1981.

Thomas E. Martin, Asst. U.S. Atty., Joseph P. Stadtmueller, U.S. Atty., Milwaukee, Wis., for U.S.

Gimbel, Gimbel & Reilly by Stanley P. Gimbel, Milwaukee, Wis., for plaintiff.

Quarles & Brady by Thomas J. Donnelly, Milwaukee, Wis., for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The government has petitioned for disclosure of certain grand jury matters, pursuant to Rule 6(e)(3)(C)(i), Federal Rules of Criminal Procedure. The petition is opposed by the Miller Brewing Co., the target of the grand jury, and four individual intervenors. The background of this proceeding is set out in an earlier decision in this case, reported at 510 F.Supp. 585 (E.D.Wis.1981), and need not be repeated here.

Pursuant to my earlier order, the government has provided the material it seeks to disclose for *in camera* inspection. Three questions await resolution. 1) Was the grand jury conducted in good faith solely for the purpose of a criminal tax investigation? 2) Has the government demonstrated a particularized need for the grand jury materials? 3) Is the petition properly authorized and in a correct form?

## I. IMPROPER USE OF THE GRAND JURY

In my earlier decision, I determined that this court is the appropriate forum in which to assess the government's use of the grand jury, 510 F.Supp. at p. 589. *See In re Grand Jury Subpoenas, April 1978*, 581 F.2d 1103, 1110 (4th Cir. 1978) (dicta); *In re December 1974 Term Grand Jury Investigation*, 449 F.Supp. 743, 747 (D.Md.1978). The grand jury is an institution with immense powers; those powers should be used only "to conduct investigations that are *in their inception exclusively criminal.*" *United States v. Doe*, 341 F.Supp. 1350, 1352 (S.D.N.Y.1972) (emphasis in the original). Use of a grand jury "to elicit evidence in a civil case . . . flout[s] the policy of the law." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).

Before I address the question of alleged grand jury abuse, I will consider two procedural arguments raised by Miller. Miller first contends that an evidentiary hearing is necessary to permit full development of its objections to the government's conduct, especially in light of my earlier decision denying Miller access to the grand jury material which is the subject of this proceeding. Secondly, Miller contends that it has been unfairly restricted in its analysis of the government's use of the grand jury because it has not been given access to Appendix 1 of the affidavit of Gerald Kramschuster, filed December 5, 1980.

■ The legislative history to Rule 6(e)(2)(C)(i) states that "the judicial hearing in connection with an application for a court order by the government under subparagraph (3)(c)(i)[sic] should be *ex parte* so as to preserve, to the maximum extent possible, grand jury secrecy." S.Rep.No.95–354, 95th Cong., 1st Sess. 8 (1977); *rpt. in* 1977 U.S.Code Cong. & Ad.News 527, 532. The court of appeals for the ninth circuit recently considered the meaning of the above passage and concluded that Congress did not intend to preclude a court from hearing objections to disclosure from a party such as Miller. *Sells, Inc. v. United States*, 642 F.2d 1184 (9th Cir. 1981). The *Sells* court reversed a district court decision permitting the release of grand jury material in a situation similar to the case at bar. While the court of appeals in *Sells* directed the district court to consider the objections to disclosure, it left to the district court the determination of what format should be used to consider the objections.

I am not persuaded that an oral hearing is necessary in the case at bar. Both sides have presented their positions in detail, and I do not believe an oral hearing would add anything to the presentations. The materials in question are available to the court for inspection, and the questions that have been raised can be answered by direct reference to the materials.

■ I find no merit in Miller's suggestion that it should be granted access to Appen-

dix 1. Mr. Kramschuster is the internal revenue service special agent who initiated the request for this grand jury. Appendix 1 contains his original request for the grand jury investigation. As such, it is a detailed document that sets forth the origin of the investigation and the allegations developed, the basis for the allegations, the results of the investigations previous to the request, the reasons why a grand jury investigation was needed, and recommendations for the course of the grand jury investigation. Granting Miller access to Appendix 1 would directly infringe the grand jury's secrecy that Congress expressly stated should be preserved in proceedings such as this one. Appendix 1 is a virtual blueprint of the government's investigation and use of the grand jury, and its secrecy should be maintained.

It should be noted that for a brief time Miller had access to Appendix 1; when the Kramschuster affidavit was filed, the government served Miller with it, including the appendices. As a courtesy, the government also served the affidavit on the various third parties affected by this proceeding. At Miller's insistence, an emergency hearing was held regarding the distribution of Appendix 1 to the third parties; at the hearing, the government agreed to retrieve all copies of the appendix. Miller states: "It was Miller's understanding that if the government intended to rely on Appendix 1, it would serve another copy of the Appendix on Miller." Miller then states that the government has refused to serve Miller with a copy.

I find the government's refusal justified. Miller does not state where it got its understanding; none is apparent in the record of the emergency hearing. Miller has stated various reasons why it believes the grand jury was abused. These matters will be discussed below. Granting Miller access to Appendix 1 would permit the target of a grand jury to be privy to a complete synopsis of the government's investigation. The congressional intent is clear, and I believe that intent would be subverted if the grand jury target were permitted unlimited license to fish in the waters of the investi-

gation. The government erred when it originally gave Miller access to the appendix; that error has been corrected. I see no reason to commit the error again.

■ The government must demonstrate that its use of the grand jury was to pursue a criminal investigation. This showing is particularly important when the grand jury did not return an indictment, as is the case here. *In re Grand Jury Subpoenas, April 1978*, 581 F.2d at 1110. However, the mere fact that an indictment was not returned does not mean that the government misused the grand jury.

"It is true that no indictment was returned in the present case. But that is no reflection on the integrity of the prosecution. For all we know, the trails that looked fresh at the start faded along the way. What seemed at the beginning to be a case with a criminal cast apparently took on a different character as the events and transactions were disclosed. The fact that a criminal case failed does not mean that the evidence obtained could not be used in a civil case." *Procter & Gamble*, 356 U.S. at 683–84, 78 S.Ct. at 987.

The government has filed several affidavits of individuals involved in the investigation, including the December 5, 1980, affidavit of agent Kramschuster. Mr. Kramschuster avers that he requested a grand jury investigation because there was reason to believe that Miller had violated certain criminal provisions of the internal revenue code. Kramschuster affidavit of December 5, 1980, ¶ 2. Appendix 1 sets out at length the factual basis for this belief. The appendix also includes numerous reasons why the grand jury investigation was necessary. Appendix 1, pp. 15–23. Agent Kramschuster further avers that the request for the grand jury was approved by the appropriate officials and sets out the sequence of the approval. Kramschuster affidavit, ¶¶ 3–5.

On October 14, 1980, Miller filed an affidavit of its counsel, Thomas Donnelly, in which Mr. Donnelly stated various reasons

why Miller believes the grand jury was abused. Similar arguments are contained in Miller's brief filed March 16, 1981. These arguments can be grouped into two general categories: 1) Miller argues that the government abused the grand jury by issuing subpoenas for documents that related to years in which no criminal charges could be brought; and 2) that the government also subpoenaed records from third parties that had no relationship to any charges that could be brought.

I believe that the government has set forth reasons for its actions that adequately address Miller's contentions. The government requested the grand jury to investigate charges that Miller had violated 26 U.S.C. §§ 7206(1) and (2). These subsections provide criminal penalties for filing or assisting in the filing of false or fraudulent tax returns, affidavits, or other documents.

The government explains that it was necessary to conduct a wide-ranging examination of the data underlying the suspect filings. Appendix 1 reveals the specific areas of concern were various sales promotions. The examination included comparisons with data from years prior to the suspected years, and data from subsequent years, to determine if similar transactions were being treated differently. The affidavit of Thomas Martin, filed December 5, 1980, also explains that the investigation was broadened to involve other suspected violations. I find the government's explanations credible, and I reject any contention by Miller that the subpoenas for material relating to years other than those for which criminal charges were possible are evidence that the grand jury was abused.

I have also examined the materials that were subpoenaed from third parties. These materials are all related to Miller's promotional practices, the area the government suspected involved falsities in Miller's tax filings and other violations. I find that the government has adequately explained its reasons for issuing subpoenas for this material; I find nothing to suggest that the grand jury process was abused.

Miller argues that the government has not adequately explained its reasons for the subpoenas regarding the materials. I reject the implied contention that in proceedings of this type the government must always state with minute specificity its reasons for seeking the material in question. Such an inquiry would infringe upon the secrecy of the grand jury process by requiring the government to reveal the details of the investigatory process. The government has given credible explanations for its conduct of this grand jury. These explanations are not last-minute rationalizations; they are consistent with Appendix 1, which was prepared before the grand jury was impaneled. I do not find these explanations lacking in detail, and I am persuaded that any further inquiry would only reveal the inner workings of the grand jury for no proper purpose.

Miller also contends that during the plea negotiations prior to the impaneling of this grand jury, a government representative stated that the grand jury investigation would be a "massive intrusion" into Miller's affairs. Donnelly affidavit of October 14, ¶ 6. Miller contends that this demonstrates that the government intended to abuse the grand jury. I do not agree. The record before me indicates that the grand jury did indeed intrude into the affairs of Miller, but that would be the result of any investigation of this type into the tax matters of a large corporation. I make no comment on the propriety of that remark in the context of the plea negotiations, but I find nothing to suggest that the grand jury process was abused because of that remark or because of the failure of the plea negotiations.

## II.   PARTICULARIZED NEED

The Supreme Court has stated that a party seeking the disclosure of grand jury transcripts must demonstrate a "particularized need" for them. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979); *citing Procter & Gamble, supra*. The government argues that the need for secrecy has lessened, that the materials are a

small portion of a voluminous record and directly relate to possible disallowances of tax deductions taken by Miller, and that it would be expensive and wasteful to require the government to duplicate the efforts of the grand jury.

Miller responds that convenience and cost savings are not sufficient as a matter of law to constitute particularized need, citing *Procter & Gamble* and other cases. However, the cases cited by Miller, including *Procter & Gamble*, are distinguishable from the case at bar because in each of those cases a party other than the federal government was either seeking access to the actual grand jury transcripts or also the names of the witnesses who testified before the grand jury. Only item eight of the materials the government seeks in the case at bar involves grand jury testimony. I will first consider items one through seven; item eight will be discussed later in this decision.

■ Items one through seven include only documentary evidence subpoenaed from Miller and various third parties. Thus the interest in grand jury secrecy is much lower, for disclosure of these materials is not so likely to reveal delicate matters before the grand jury. It is not likely that disclosure will reveal the reasons why the grand jury sought the materials or what significance the grand jury attached to the documents. *See United States v. Stanford*, 589 F.2d 285, 289–91 (7th Cir. 1978).

Wasteful duplication of effort is a valid, but not controlling, consideration in such a situation. Duplication of the grand jury investigation would engender significant costs not only to the government but to Miller and the third parties. Miller may wish to experience another "massive intrusion," but it seems unfair to require the third parties to submit once again to subpoenas for material that they have previously produced. The government also points out that at least some of the material may no longer exist. *See* Martin affidavit of December 5, ¶ 4; Kramschuster affidavit of December 5, ¶ 9A; Appendix 1, p. 16. There is little point in requiring the government to subpoena the materials in items

one through seven and forcing the subpoenaed parties to again search potentially voluminous files for documents that may not exist; this is especially true when the documents in question have already been provided and are contained in a readily assimilated form. *See In the Matter of Grand Jury Investigation of Andrew Penteleakis*, Misc. No. 79–30 (D.R.I., filed September 28, 1979).

In my earlier decision in this case, I denied Miller access to these materials in order to preserve grand jury secrecy. I noted that disclosure might affect the willingness of witnesses to testify before future grand juries. No such consideration is relevant here. The requested disclosure relates to the government's civil tax authorities, not to the target of the grand jury. Significantly, none of the third parties whose documents are to be disclosed have intervened to object. In addition, the government's tax investigators are required to maintain the secrecy of items disclosed for civil tax purposes; *see* 26 U.S.C. § 6103.

Considering all these matters together, I am persuaded that the government has made out a showing of particularized need sufficient to outweigh the interest in grand jury secrecy that is present. I find that justice would be served by disclosure of items one through seven.

■ Item eight consists of transcripts of the testimony of the four individual intervenors. The latter four individuals object to disclosure and state that they are willing to give testimony pursuant to an IRS summons. Affidavit of Stanley Gimbel, filed October 16, 1980, ¶ 10.

The transcripts of item eight are verbatim records of the workings of the grand jury. Thus the interest in preserving grand jury secrecy is high. The government advances the same reasons for disclosure that it advanced for items one through seven. The analysis is different, however, for mere convenience and lessened cost are not by themselves sufficient to establish a particularized need for grand jury transcripts. *Procter & Gamble*, 356 U.S. at 682, 78 S.Ct. at 986; *United States v. Sobotka*, 623 F.2d 764, 768 n.5 (2d Cir. 1980).

The government also points out that at least some of the intervenors had asserted their fifth amendment right against self-incrimination during interviews prior to the impanelment of the grand jury, and that these individuals eventually testified under grants of immunity. Thus the government contends that the grand jury testimony is more likely to be truthful than that produced in any future interviews.

This argument has merit, but I am not persuaded that the government has made a sufficient showing at this stage of the proceedings. If the government was seeking access to the transcripts for impeachment purposes or because the testimony was unavailable it might then have sufficient particularized need to outweigh the interest in secrecy that is present. To make such an argument the government must first attempt to interview the four intervenors to determine their willingness to cooperate. Accordingly, I will not grant access to the material of item eight.

### III. OTHER ISSUES

Miller contends that this very petition violates the authorization to proceed with the grand jury investigation. Appendix 4 to Mr. Kramschuster's affidavit of December 5, 1980, is a letter from Mr. Trainor to the "Regional Counsel" and the "Regional Commissioner" of the IRS. In his letter, Mr. Trainor states: "No disclosure is to be made of [grand jury] material by IRS personnel for other than criminal purposes...." I find this sentence to mean nothing more than that the government is to preserve the secrecy of the grand jury material and not make unauthorized use of it. I find nothing in the letter to support the contention that the instant petition is improper; I reject Miller's argument to the contrary.

■ Miller also contends that the petition should be denied because the record does not contain the proper letters of authorization for it that are required by IRS regulations. Agent Kramschuster has stated that proper procedure was followed. *See* Exhibit 1 of the government's brief of January 6, 1981. In addition, whatever internal requirements the IRS may have vest no rights in Miller, *see United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979); these rules also have little to do with the issue of preserving the secrecy of the grand jury. Rule 6(e) vests that function with the courts, in proceedings such as this one. I find no merit in Miller's contention.

■ Miller also argues that the petition should be denied because it seeks materials for "a continuing tax investigation." Miller argues that the records are no longer necessary for this purpose because the investigation has been completed and the government has issued a notice of deficiency to Miller. The government argues that further investigation is possible and that it can issue additional deficiency notices if circumstances warrant.

I do not intend to resolve here the side dispute over the government's powers to investigate further and to issue further deficiency notices. The government has made no secret of its intention to issue a notice of deficiency against Miller, *see* Martin affidavit of December 5; indeed, such a proceeding is necessary for disclosure under Rule 6(e)(3)(C)(i). Miller's argument is essentially that because events have progressed sufficiently that the petition is somewhat dated, it should be rejected and the government required to start again from the beginning. This would only serve to reward dilatory tactics. The government has kept the court and Miller advised of the subsequent events, and I find no prejudice to Miller from the fact that the government has taken certain necessary steps without the benefit of the materials sought.

### IV. CONCLUSION

I will grant the government's petition for disclosure as to items one through seven. The government has stated that the individuals named in the petition as proposed recipients of the materials are no longer associated with the investigation. Accordingly, I request that within ten days of the date

of this order the government provide the names of those individuals to whom custody of the records should be transferred.

I will deny the petition for disclosure as to item eight without prejudice to its being renewed upon a sufficient showing of particularized need for the transcripts. This court is not necessarily the appropriate one to review a renewed petition; further proceedings regarding item eight should be held before the court that hears the government's claims against Miller. Accordingly, I will direct that item eight be retained by the clerk of court until such time as the government communicates to such clerk the location and identity of the court before which the tax litigation shall proceed. After such communication, the clerk is to release item eight to that court for whatever *in camera* inspection is necessary in light of a renewed petition for disclosure. *See Douglas Oil*, 441 U.S. at 228–231, 99 S.Ct. at 1677–1679.

Therefore, IT IS ORDERED that the government's petition for disclosure be and hereby is granted in part (as to items one through seven) and denied in part (as to item eight), the latter without prejudice.

IT IS ALSO ORDERED that the clerk of court retain item eight as described herein.