GRUMMAN AEROSPACE
CORPORATION,
Plaintiff,

v.

TITANIUM METALS CORPORATION OF AMERICA; RMI Company; Lawrence Aviation Industries, Inc.; National Distillers and Chemical Corp.; and United States Steel Corporation, Defendants.

FAIRCHILD INDUSTRIES,
INC., Plaintiff,

v.

TITANIUM METALS CORPORATION OF AMERICA; RMI Company; Lawrence Aviation Industries, Inc.; National Distillers and Chemical Corp.; and United States Steel Corporation, Defendants.

GENERAL ELECTRIC COMPANY,
Plaintiff,

v.

TITANIUM METALS CORPORATION OF AMERICA; Lawrence Aviation Industries, Inc.; Crucible, Inc.; and Martin Marietta Aluminum, Inc., Defendants.

Nos. 80CV2809, 81CV2276 and 81CV2298.

United States District Court,
E.D. New York.

Dec. 22, 1982.

Cahill, Gordon & Reindel by Dudley B. Tenney, Donald S. Parker, Kevin J. Burke and George C. Barry, New York City, and Davis, Polk & Wardwell by Robert B. Fiske, Jr., Lowell Gordon Harriss, D. Scott Wise, and Milman & Shwergold by James I. Serota, New York City, for plaintiffs.

Buchanan, Ingersoll, Rodewald, Kyle & Buerger, P.C. by Thomas L. VanKirk and Wendelynne J. Newton, Pittsburgh, Pa., (Larry E. Christensen, Washington, D.C., of counsel), for defendant Titanium Metals.

White & Case by Haliburton Fales, James P. Laughlin and Robert F. Callahan and Breed, Abbott & Morgan by Robert A. Bicks, James J. Sabella, New York City, for defendants RMI, Nat. Distillers, and U.S. Steel.

Arnold & Porter by Jack Lipson and Bruce M. Chadwick, Washington, D.C. for defendant Martin Marietta.

Strassburger, McKenna, Messer, Shilobod & Gutnick by H. Yale Gutnick and James W. Carroll, Jr., Pittsburgh, Pa., for Robert B. Connell.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiffs in these related treble-damage antitrust cases, which have been consolidated for pre-trial discovery purposes, have requested access to certain grand jury transcripts pursuant to Rule 6(e)(3)(C)(i), F.R. Crim.P. The grand jury, now defunct, sat in 1977–78 in the Western District of Pennsylvania to investigate pricing practices in the titanium mill industry. Indictments alleging a price-fixing conspiracy were handed down, and several defendants entered pleas of *nolo contendere* or guilty. Subsequently, various private antitrust suits were filed, including these three cases and *United States v. RMI Company,* 81 Civ. 4177 (E.D.N.Y., filed Dec. 12, 1981), a case brought by the government in its proprietary capacity also pending before this Court.[1]

The consolidated plaintiffs have requested access to the grand jury minutes in their entirety. Alternatively, they seek access to the testimony of Robert Connell and Ward Minkler, former vice-presidents of defendant Titanium Metals Corporation of America, and of William Price, a former employee of defendant RMI, or at least access to portions of Connell's and Minkler's testimony which corresponds to matters covered in depositions. Additionally, if plaintiffs are not permitted total access to the grand jury minutes, they seek an order requiring defendants to identify which portions of the transcripts have previously been made available to defendants, and granting plaintiffs access to those transcripts.

■ Grand jury secrecy ensures the proper functioning of that system, and may only be lifted "discretely and limitedly." *United States v. Proctor & Gamble Co.,* 356 U.S. 677, 683, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958); *accord, Douglas Oil Company of California v. Petrol Stops Northwest,* 441 U.S. 211, 221, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979). The Supreme Court in *Douglas Oil* established a three-part standard for determining whether traditional grand jury secrecy must yield to specific party needs:

> "Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceed-

---

1. The government requested leave to file a brief as amicus curiae. Although the government's views may be helpful to this Court, the unique position of the government as a competing private litigant raises questions as to the propriety of their involvement here. *See Alexander v.* *Hall,* 64 F.R.D. 152, 155–56 (D.S.C.1974). Accordingly, in the exercise of discretion, the leave requested is denied, without prejudice, however, to the government requesting such leave in any proceedings in the Western District of Pennsylvania.

ing, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Id.* at 222 (footnote omitted).

The issue, therefore, is "whether a particularized need for disclosure outweigh(s) the interest in continued grand jury secrecy." *Id.* at 223, 99 S.Ct. at 1675.

■ A particularized need for grand jury testimony must be demonstrated by more than a mere showing that such material is relevant. *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959). The party seeking the testimony must focus "on a specific area of inquiry," *United States v. Moten,* 582 F.2d 654, 663 (2d Cir.1978), and must show that the grand jury testimony will contain needed information not otherwise available. *E.g., Index Fund v. Hagopian,* 512 F.Supp. 1122, 1130 (S.D.N.Y.1981). Access to grand jury minutes cannot be used solely to circumvent traditional discovery methods.

The Second Circuit has indicated that once a party has sufficiently demonstrated a particularized need, the court should generally review *in camera* the requested portions of the grand jury testimony:

"The district court below had the obligation to assess the strength of the particularized showing of need made by the Government in view of the case law and then to make an *in camera* examination of the pertinent portions of the grand jury transcript. The disclosure order must be structured to cover only the material required in the interests of justice." *United States v. Sobotka,* 623 F.2d 764, 768 (2d Cir.1980).

The Second Circuit has cautioned, however, against an "approach [that] would unnecessarily burden the courts with the task of scouring the grand jury minutes *in camera* for details that were not otherwise disclosed." *Moten,* 582 F.2d at 644. If, as is the case here, the information sought is to be used to refresh faulty recollection or to impeach a witness, the reviewing court need not draw fine lines concerning what materials may be released:

" 'Trial judges ought not to be burdened with the task or the responsibility of examining sometimes voluminous grand jury testimony in order to ascertain inconsistencies with trial testimony. In any event, "it will be extremely difficult for even the most able and experienced trial judge under the pressures of conducting a trial to pick out all of the grand jury testimony that would be useful in impeaching a witness." *Pittsburgh Plate Glass,* 360 U.S. at 410, 79 S.Ct. at 1237 (dissenting opinion). Nor is it realistic to assume that the trial court's judgment as to the utility of material for impeachment or other legitimate purposes, however conscientiously made, would exhaust the possibilities. In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate.' " *Illinois v. Sarbaugh,* 552 F.2d 768, 776–77 (7th Cir.1977), *quoting Dennis v. United States,* 384 U.S. 855, 874, 86 S.Ct. 1840, 1851, 16 L.Ed.2d 973 (1966).

Intertwined with whether plaintiffs may obtain any part of the grand jury testimony is which court is best suited to review this matter. The need to maintain grand jury secrecy must be balanced against the need for access. Numerous policy reasons support the maintenance of grand jury secrecy, and some of these concerns clearly are not dissipated even though the grand jury has completed its investigation. *Douglas Oil Co.,* 441 U.S. at 219, 99 S.Ct. at 1673; *Proctor & Gamble,* 356 U.S. at 681–82 n. 6, 78 S.Ct. at 985–986 n. 6. This Court has no familiarity with the actual grand jury proceedings, and thus it is not the appropriate forum to resolve the continuing need for secrecy. Although it was not necessarily inappropriate to commence this proceeding in this Court, the Western District of Pennsylvania presided over the grand jury and has custody of its transcripts. Therefore, it is the only court that can ascertain the continuing concerns for secrecy or that can order release of the transcripts to either this Court or to the parties.

Conversely, the civil litigation is pending before this Court, giving this Court a certain expertise in determining the particularized needs of the plaintiffs. *Douglas Oil Co.*, 441 U.S. at 229–30, 99 S.Ct. at 1678–79; *see Baker v. United States Steel Corp.*, 492 F.2d 1074, 1076–77 (2d Cir.1974); *Index Fund*, 512 F.Supp. at 1124–26. For two reasons, a determination at this time by this Court as to what needs have already been demonstrated with sufficient particularity is efficient and desirable. First, the Western District of Pennsylvania might then determine that it has before it enough information to resolve the immediate questions of access to the grand jury testimony, obviating a return to this Court for *in camera* review. *See Douglas Oil Co.*, 441 U.S. at 228, 99 S.Ct. at 1677 (stating that disclosure of grand jury testimony requires "a coordinating of the informed views of both the civil trial court and the grand jury court"). Second, as discovery progresses in these complex antitrust cases, this Court anticipates a return by the parties either to this forum or to the Western District of Pennsylvania for further access to the grand jury materials. This Court has before it now all relevant information concerning the present needs of the civil litigants, and can effectively guide the parties as to what additional showing must be made before any greater access to the grand jury materials can be considered.

Plaintiffs offer several arguments to support general access to the grand jury minutes. First, the United States has brought suit against several of these consolidated defendants in its proprietary capacity as a private purchaser of titanium products. *United States v. RMI Company*, 81 Civ. 4177. A competing litigant, the United States apparently has and is utilizing information it acquired in the grand jury proceedings. Second, some of the defendants have had access to the grand jury transcripts, and have referred to notes of the grand jury proceedings in responding to depositions. Third, plaintiffs broadly assert that the grand jury testimony is necessarily more reliable and a product of fresher recall than any testimony currently available to them.

Plaintiffs also cite specific instances that they believe demonstrate either a pattern of discovery difficulties sufficient to justify general access or at least a particular need for access to certain testimony. First, Connell and Minkler have provided arguably evasive and incomplete answers in deposition, possibly in contradiction to testimony given before the grand jury. Second, Price has indicated that he will assert a fifth amendment privilege to all deposition questions, and Minkler has claimed a fifth amendment privilege with regard to all events between November 1976 and April 1977.

Plaintiffs' arguments will be considered seriatim. For the reasons that follow, this Court finds that plaintiffs do not have a right to general access to the grand jury minutes. Rather, plaintiffs have thus far demonstrated a particularized need sufficient to justify an *in camera* review of the grand jury transcripts only as to limited areas of testimony by witnesses Connell and Minkler.

■ Access by the government as a civil litigant to grand jury materials does not mandate disclosure of those materials to other private parties who are pursuing similar claims. Although access by the government to certain information unavailable to plaintiffs may result in plaintiffs' relative disadvantage, that harm alone is insufficient to justify invasion of grand jury secrecy. *Cf. Texas v. United States Steel Corp.*, 546 F.2d 626, 631 (5th Cir.), *cert. denied*, 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977); *In re Grand Jury*, 469 F.Supp. 666, 669–70 (M.D.Pa.1978). In *United States v. Proctor & Gamble*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), the Supreme Court held that defendants did not have a right to broad access to grand jury testimony even though the government was utilizing that testimony in civilly prosecuting the defendant. Plaintiffs in these cases do not present even as compelling a need for the grand jury materials as did the defendants in *Proctor & Gamble*, who were directly

confronted by a party armed with the entire grand jury transcript.

Notably, the district court on remand in *Proctor & Gamble* ultimately granted defendants complete access to the grand jury minutes because, the court held, the grand jury itself had been convened solely to generate evidence for eventual civil prosecutions. *United States v. Proctor & Gamble,* 187 F.Supp. 55, 57 (D.N.J.1960), *on remand from* 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). In light of the resultant criminal indictments and pleas, however, no similar allegation of government impropriety could be made in the instant cases. It may be that the interests in grand jury secrecy should prohibit the use of grand jury testimony even by the government in subsequent civil prosecutions, *see In re Grand Jury Investigation of Cuisinarts, Inc.,* 665 F.2d 24, 31 (2d Cir.1981), but that issue is not before the Court at this time. In any case, the assertion that the government is utilizing the grand jury materials in another matter does not warrant further intrusion into grand jury secrecy simply to afford these private plaintiffs comparable access.

Similarly, the bare allegation that some of the defendants or deposition witnesses have had access to grand jury transcripts or have referred to notes of the grand jury proceedings will not support plaintiffs' claim. *See, e.g., United States Steel Corp.,* 546 F.2d at 631; *In re Grand Jury,* 469 F.Supp. at 669–70. Grand jury witnesses are at liberty to disclose their testimony as they choose, and notes of interviews with such witnesses may have been properly obtained by defendants. Rule 6(e)(2), F.R. Crim.P. Witnesses or their employers may also have properly been given copies of their testimony. Rule 16(a)(1)(A), F.R. Crim.P. Such unequal access to grand jury testimony may be considered in granting subsequent disclosure, but it is not determinative. *See Illinois v. Sarbaugh,* 552 F.2d 768, 776 (7th Cir.1977).

■ Merely citing access by an opposing party does not demonstrate a particularized need. The party seeking access should specify which portions of the testimony have been obtained by other parties, whether such possession is improper, and what harm has resulted from unequal access. Only then can the Court determine whether to lift "discretely and limitedly" the grand jury secrecy to accommodate a particularized need.

■ Plaintiffs' remaining arguments for broad access are also insufficient as they fail to demonstrate a particularized need. Sworn grand jury testimony may be more reliable than subsequent deposition testimony, and time may cause witnesses' memories to falter. Large portions of this grand jury testimony may be relevant to the issues in these cases, and without doubt would be helpful to plaintiffs. Even a pattern by multiple witnesses of evasive answers or refusal to respond in depositions cannot, however, substitute for the showing of particularized need for specific areas of inquiry. *See, e.g., Index Fund,* 512 F.Supp. at 1130; *In re Grand Jury,* 469 F.Supp. at 670.

■ The need to refresh a witness' demonstrably faulty recollection, or to impeach current testimony that is in probable contradiction with statements to the grand jury, will support access to specific portions of a specific witness' grand jury testimony. Plaintiffs have provided this requisite showing of particularized need with regard to the grand jury testimony of witnesses Connell and Minkler concerning inquiries into the events of 1970 and 1971, the time period covering the beginning of the alleged conspiracy.

Both witnesses have been deposed as to these events. Excerpts from their deposition testimony indicate memory lapses and incomplete answers, and plaintiffs have adequately shown that the grand jury transcripts could enable plaintiffs to refresh or impeach these witnesses on these matters. For example, a memorandum prepared by Connell contemporaneous with the grand jury investigation denotes a more detailed recollection of events at that time. Similarly, Minkler's attorneys have defended his depositions with portions of his grand jury

testimony, providing information that appears to be beyond his current recall.

As previously discussed, this Court is unable to authorize disclosure of these portions of Connell's and Minkler's testimony unless, first, it obtains proper custody of the grand jury transcripts from the Western District of Pennsylvania; and second, it is apprised by the Western District of Pennsylvania that the continuing secrecy concerns permit limited disclosure upon the showing of particularized need; and third, it conducts an *in camera* review of the grand jury transcripts to delimit which portions address this specific area of inquiry. If an eventual *in camera* inspection does reveal, however, that Connell and Minkler did provide testimony as to the beginnings of the conspiracy, the Court would not find itself compelled to engage further in a detailed and burdensome comparison of these witnesses' depositions and their grand jury testimony. *See Moten,* 582 F.2d at 664; *Sarbaugh,* 552 F.2d at 776–77. Furthermore, plaintiffs need not demonstrate that other available statements by Connell and Minkler, who apparently have testified in multiple related cases, would not equally fulfill their needs. Once a particularized need is shown and is determined to outweigh continued secrecy concerns, the exact value of the grand jury testimony is a judgment for the litigants and not the court. *Id.*

■ The present unavailability of a witness' testimony because of an assertion of privilege will also establish the requisite particularized need. *E.g., Moten,* 582 F.2d at 663. Plaintiffs in these cases, however, have not yet demonstrated the foundation necessary to prove unavailability.

■ Plaintiffs assert that Price has stated that he will claim a fifth amendment privilege on all matters concerning the alleged price-fixing conspiracy, and that Minkler has already claimed a fifth amendment privilege in depositions concerning events in 1976 and 1977, the period in which the alleged conspiracy concluded. As to Price, plaintiffs must additionally show that they sought to question him and were blocked by an assertion of privilege. Fur-

thermore, as to both Price and Minkler, plaintiffs must also attempt to compel their responses. Only after plaintiffs have taken these steps will they be able to argue that the unavailability due to privilege results in particularized need sufficient to invade grand jury secrecy. *E.g., id.; In re Petition of the United States for the Disclosure of Grand Jury Matters (Miller Brewing Company),* 518 F.Supp. 163, 169 (E.D.Wis.1981); *In re Grand Jury,* 469 F.Supp. at 670–71; *In re Grand Jury Transcripts,* 309 F.Supp. 1050, 1053 (S.D.Ohio 1970).

In sum, this Court finds that the applicable standard articulated in *Douglas Oil Co.* requires a demonstration that particularized need for access to the grand jury testimony outweighs continuing secrecy concerns. Only the custodian court, the Western District of Pennsylvania, can determine the degree of secrecy needed and can authorize access to the testimony.

The *Douglas Oil Co.* standard also anticipates a coordinating of the expertise of the custodian court and the civil trial court. Because this Court is most familiar with the civil litigation and with the present efforts to show particularized need, it has detailed its views on the particularized need issue. This Court finds that plaintiffs have failed to demonstrate a particularized need for access to the grand jury testimony in its entirety. They have demonstrated a particularized need for the testimony of witnesses Connell and Minkler as to events concerning the beginning of the alleged conspiracy. If the transcripts are released to this Court, however, this Court would be compelled to conduct an *in camera* review. This Court further finds that plaintiffs' request to compel defendants to disclose what grand jury testimony has been made available to them is premature. Finally, nothing in this opinion is intended to preclude a return by the parties to either this Court or the Western District of Pennsylvania to seek further access to the grand jury testimony.

The Western District of Pennsylvania may, of course, make its own review of the secrecy concerns and then choose to weigh these findings to determine the appropriate disclosure of the grand jury testimony. It may elect to release the transcripts to this

Court for *in camera* inspection. It may also properly decide to reject any and all findings made here and deny access to the grand jury transcripts to any party or to this Court. If the grand jury testimony is released to this Court, however, this Court will adhere to the above findings, and to any guidance provided by the Western District of Pennsylvania regarding continued secrecy concerns, in all future requests for access to the grand jury transcripts. This Court suggests that the parties now either seek release of the transcripts to this Court for *in camera* review, or submit the entire matter of access to the grand jury transcripts to the Western District of Pennsylvania.

SO ORDERED.