In the Matter of GRAND JURY PROCEEDINGS, MILLER BREWING COMPANY.

Appeals of MILLER BREWING COMPANY; Harlan Woyahn, Thomas Hoover, James Doherty and Ernest Anschutz; and United States of America.

Nos. 81–2077, 81–2115 and 81–2407.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1981.

Decided Sept. 3, 1982.

See also, D.C., 510 F.Supp. 585.

Thomas J. Donnelly, Quarles & Brady, Stanley P. Gimbel, Gimbel, Gimbel & Reilly, Milwaukee, Wis., for appellant.

Deborah A. Wright, Tax Div., Dept. of Justice, Washington, D. C., for appellee.

Before WOOD, Circuit Judge, FAIRCHILD, Senior Circuit Judge, and ROSZKOWSKI,* District Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

All parties appeal from the decision and order of the United States District Court

---

* The Honorable Stanley J. Roszkowski, Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

for the Eastern District of Wisconsin. In two written opinions, the district court held, *inter alia*, that 1) the Miller Brewing Company ("Miller") was not entitled to an adversary hearing regarding the government's use of the grand jury; 2) since Miller did not demonstrate particularized need, its counsel could not inspect certain grand jury documents; 3) the government demonstrated particularized need for the requested grand jury documents and therefore, disclosure of the requested documents to the civil division of the Internal Revenue Service ("IRS") was proper; 4) the government did not demonstrate particularized need to permit the court to disclose certain grand jury transcripts; and 5) the proper procedure regarding the requested grand jury transcripts was to transfer the transcripts to the "court before which the tax litigation [would] proceed" to facilitate that court's *in camera* inspection in light of any renewed petition for disclosure. *Petition of the United States for the Disclosure of Grand Jury Matters (Miller Brewing Company),* 510 F.Supp. 585 ("*Miller I*"); 518 F.Supp. 163 (E.D.Wis.1981) ("*Miller II*"). We affirm, in part; reverse, in part; and remand for further proceedings consistent with this opinion.

## I. *Background*

In 1979, the government began a grand jury investigation into the tax affairs of Miller. The grand jury subpoenaed documents from Miller and others, and took the testimony of numerous witnesses. In June, 1980, the government terminated the grand jury investigation without the return of an indictment.

In October, 1980, the United States petitioned the United States District Court for the Eastern District of Wisconsin to disclose certain grand jury materials to the IRS for civil tax investigation purposes.[1] Fed.R.

---

1. The government requested disclosure to IRS District Counsel, Milwaukee, two Revenue Agents of the Examination Division of the IRS, and any other agent subsequently assigned to the civil tax examination of Miller.

Crim.P. 6(e). These materials included seven categories of documents and notes subpoenaed by the grand jury and an eighth category including transcripts of the testimony of four grand jury witnesses who are current or former employees of Miller. Disclosure was sought "solely for furthering said civil tax examination of the Miller Brewing Company, a subsidiary of Philip Morris, Inc."

Miller moved to intervene in the disclosure proceedings. It also petitioned for an order allowing its counsel to inspect some of the requested grand jury materials,[2] alleging that inspection was necessary to demonstrate "that the grand jury proceeding was not conducted solely for the purpose of a good faith criminal tax investigation." Four grand jury witnesses whose testimony was recorded in the requested transcripts also moved to intervene. The witnesses opposed both Miller's request to inspect the transcripts and the government's disclosure petition.

In March, 1981, the district court addressed the government's petition, as well as the motions to intervene and inspect. *Miller I*, 510 F.Supp. 585. First, the court permitted Miller and the four grand jury witnesses whose testimony was recorded in the requested transcripts to intervene in the proceeding.[3] *State of Illinois v. Sarbaugh*, 552 F.2d 768, 772–73 (7th Cir.), *cert. denied*, 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977). Second, the district court denied Miller's motion to inspect the grand jury materials, without prejudice to Miller's right to raise its allegations regarding the government's abuse of the grand jury investigation for the court's consideration in reaching a decision on the merits. Third, the district court postponed its decision regarding disclosure to the IRS, in order to give Miller a chance to respond to the government's position. Fourth, the district court rejected the government's contention

that Miller should have addressed the propriety of the government's use of the grand jury at the time of the grand jury proceedings, or at a future time when the government attempts to introduce any disclosed material into evidence at a subsequent judicial proceeding. The district court found that the government was "required to demonstrate its *bona fides* prior to obtaining a Rule 6(e) ... order .... particularly ... where a grand jury fails to return an indictment." *Miller I*, 510 F.Supp. at 589 (citing *In re Grand Jury Subpoenas, April, 1978, at Baltimore*, 581 F.2d 1103, 1110 (4th Cir. 1978), *cert. denied*, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979)). The district court requested to view *in camera* the items which the government was seeking to disclose to the IRS. Finally, the court reserved ruling on the need for an evidentiary hearing on the issue of grand jury abuse.

After the district court's first decision and while the government's petition for disclosure was still pending, the IRS issued a statutory notice of deficiency, for the years 1971 through 1976, against Philip Morris, Inc., Miller's parent corporation. Miller then urged the district court to dismiss the government's petition on the ground that disclosure could no longer be for "a continuing tax investigation" as stated in the petition since the civil tax investigation ended when the government issued its notice of deficiency.

In June, 1981, the district court rendered its decision and order which is the subject of this appeal. *Miller II*, 518 F.Supp. 163. The district court found that there was no abuse of the Miller grand jury, and ordered disclosure of the requested documents to IRS personnel, to be designated by the government, for use in connection with litigation relating to Miller's civil tax liabilities. The court, however, denied disclosure of the requested transcripts without prejudice to a renewed petition for disclosure

---

**2.** Miller requested to inspect only the material subpoenaed by the grand jury from third parties and the testimony of the four individual intervenors.

**3.** The government did not object to Miller's right to intervene. Moreover, the district court

noted that the Supreme Court has held that parties such as these intervenors have standing to object to a disclosure order. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 n.8, 99 S.Ct. 1667, 1672 n.8, 60 L.Ed.2d 156 (1979); Fed.R.Civ.P. 24(a)(2).

upon a showing of particularized need. The district court ordered transfer of the transcripts to "the court before which the tax litigation shall proceed"[4] to facilitate that court's determination on any future petition for disclosure. *Id.* at 170. The transferee court turned out to be a tax court, rather than another district court. In July, 1981, the government designated IRS District Counsel, Manhatten, to receive the documents for use in "the Miller audit and/or any legal proceedings had in conjunction therewith."

All parties appeal from the district court's decision and order.[5] Miller appeals from all portions of the decision and order, while the four intervenors only appeal from that part which would transfer the transcripts of their grand jury testimony to the tax court. The United States filed a cross-appeal from that part of the district court's order which denies disclosure of the requested transcripts.

## II. *Appealability*

Although not raised as an issue by the parties, there is the threshold question as to whether this is an appealable order. Some courts have found that an order granting or denying disclosure, or directing transfer of federal grand jury materials to another court, relates only to pretrial discovery and is interlocutory and nonappealable. *See, e.g., In re 1975–2 Grand Jury Investigation of Associated Milk Producers, Inc.*, 566 F.2d 1293 (5th Cir.), *cert. denied*, 437 U.S. 905, 98 S.Ct. 3092, 57 L.Ed.2d 1135 (1978); *Baker v. United States Steel Corp.*, 492 F.2d 1074 (2d Cir. 1974). *But see In re Grand Jury Proceedings (Alpha Portland Industries, Inc.)*, 649 F.2d 387 (6th Cir.), *cert. dismissed*, 453

U.S. 946, 102 S.Ct. 17, 69 L.Ed.2d 1033 (1981). The courts' reasoning is that a party can challenge admission of improperly obtained evidence after final judgment. Moreover, releasing materials to another court is merely a mechanical step and not an order of disclosure.

 Where litigation of the disclosure motion is the only pending federal proceeding, however, an order granting or denying the motion is appealable. *See In re Grand Jury Investigation*, 630 F.2d 996 (3d Cir. 1980), *cert. denied*, 449 U.S. 1081, 101 S.Ct. 865, 66 L.Ed.2d 805 (1981); *United States v. Sobotka*, 623 F.2d 764 (2d Cir. 1980). The court where the current tax litigation is proceeding would have no authority to review a discretionary action by a federal district court judge. Therefore, the only opportunity for review would be an appeal of the district court order to this court. Moreover, review is necessary in light of the damage which may be created by unwarranted breaches of secrecy and the cost of relitigating trials tainted by admission of grand jury transcripts later held to have been improperly disclosed.[6] 8 J. MOORE, MOORE'S FEDERAL PRACTICE, ¶ 6.05[7][c] (2d ed. 1981). The disclosure and transfer order here is a "final decision." *See In re Grand Jury Investigation No. 78–184 (Sells)*, 642 F.2d 1184, 1187 (9th Cir. 1981), *cert. granted sub nom. United States v. Sells Engineering, Inc.*, —— U.S. ——, 102 S.Ct. 2034, 72 L.Ed.2d 483 (1982).

## III. *Adversary Hearing*

 Miller argues that it "raised substantial questions regarding the good faith of the grand jury investigation"[7] and that

4. On June 25, 1981, Philip Morris filed a petition with the United States Tax Court contesting the deficiencies asserted in the statutory notice of deficiency issued in March, 1981.

5. We granted Miller's motion for a stay of the order pending resolution of this appeal.

6. While we need not decide the issue today, it appears that fairness would require exclusion of any evidence in a civil proceeding which had been improperly obtained from the grand jury. *See* S.Rep.No. 95–354, 95th Cong., 1st Sess. 7 n.12, *reprinted in* 1977 U.S.Code Cong. & Admin.News, p. 531 n.12.

7. For example, Miller points out that many of the documents subpoenaed by the grand jury relate only to taxable years for which the applicable statute of limitations for criminal, but not civil, purposes had expired. Moreover, Miller argues that the grand jury investigation was used as a threat, and later in retaliation, because Miller refused to plead guilty to an alleged misdemeanor tax charge and to an offer in compromise of undisclosed Federal Alcohol Administration Act charges.

an evidentiary or oral hearing is necessary to allow it to demonstrate that the grand jury investigation was conducted in bad faith.[8] The government suggests that Miller should have addressed this issue at the time of the grand jury investigation or at a future time when the government attempts to introduce any disclosed material into evidence at a subsequent judicial proceeding. The district court determined that it was an appropriate forum in which to assess the government's use of the grand jury. *Miller I*, 510 F.Supp. at 589.

It is unclear whether Miller is requesting a hearing at a time when the court considers Miller's allegations of grand jury abuse and/or at a time when the court considers a Rule 6(e) disclosure order to the government. The two hearings are related, and in some cases would be the same, since any grand jury abuse would bear heavily on the district court's decision whether to disclose. *United States v. Procter & Gamble*, 356 U.S. 677, 683, 78 S.Ct. 983, 986–87, 2 L.Ed.2d 1077 (1958); *In re April 1956 Term Grand Jury*, 239 F.2d 263 (7th Cir. 1956). In *In re Grand Jury Subpoenas, April, 1978, at Baltimore*, 581 F.2d at 1110 & n.15, the court recognized two procedures, finding that Congress intended that the government's application for a disclosure order would be *ex parte* in the interests of grand jury secrecy, but that the district court was not precluded from holding as extensive a hearing as required to satisfy itself that the government's use of the grand jury process had been proper. Although the district court did not distinguish between the two types of hearings, we will examine the propriety of an adversary hearing at both points in time.

## A. Hearing Regarding Allegations of Grand Jury Abuse

 A grand jury investigation is not conducted in good faith unless it is used to conduct investigations that are in their inception exclusively criminal. *Procter & Gamble*, 356 U.S. at 683, 78 S.Ct. at 986–87; *In re April 1956 Term Grand Jury*, 239 F.2d at 272; *United States v. Doe*, 341 F.Supp. 1350, 1352 (S.D.N.Y.1972). There is no evidence of bad faith from the mere fact that the government conducted a grand jury proceeding without returning an indictment and later seeks to use the material in a civil investigation. A grand jury investigation used to investigate alleged criminal violations may uncover civil violations as well. *Procter & Gamble*, 356 U.S. at 683–84, 78 S.Ct. at 986–87. Moreover, there was no intent in the legislative history of Rule 6(e) to generally preclude the use of grand jury developed evidence for civil law enforcement purposes, "assuming that the grand jury was utilized for the legitimate purpose of a criminal investigation." S.Rep.No.95–354, 95th Cong., 1st Sess. 8, *reprinted in* 1977 U.S.Code Cong. & Ad.News 527, 532.

 The court properly considered Miller's allegations of abuse, and required the government to demonstrate its *bona fides* prior to obtaining a Rule 6(e) order. *Sells*, 642 F.2d at 1192; *In re Grand Jury Subpoenas, April, 1978, at Baltimore*, 581 F.2d at 1110; *Robert Hawthorne, Inc. v. Director of Internal Revenue*, 406 F.Supp. 1098, 1118 (E.D.Pa.1975) (amended 1976). The government filed several affidavits of individuals involved in the investigation, as well as materials which included reasons why the

---

8. Miller also contends that it has been unfairly restricted in its analysis of the government's use of the grand jury because it has not been given access to Appendix 1 of the affidavit of the IRS special agent who initiated the request for the grand jury. Appendix 1 is a detailed document that sets forth the origin of the investigation and the allegations developed, the basis for the allegations, the results of the investigations previous to the request, the reasons why a grand jury investigation was needed, and recommendations for the course of the grand jury investigation. The district court found that "Appendix 1 is a virtual blueprint of the government's investigation and use of the grand jury." Without a showing of sufficient particularized need, the district court properly found that congressional intent would be subverted if the target of a grand jury were permitted unlimited access to a complete synopsis of the government's investigation. *Cf. In re Special February, 1975 Grand Jury (Baggot)*, 662 F.2d 1232, 1237–38 (7th Cir. 1981), *cert. granted*, —— U.S. ——, 102 S.Ct. 2955, 73 L.Ed.2d 1347 (1982) (statement that is "too grand jury related to be artificially distinguished from the transcript of ... the grand jury" is governed by Rule 6(e)).

grand jury investigation was necessary. Miller also filed an affidavit and set out arguments in a brief. After inspecting the requested documents *in camera* and finding that the "questions ... raised [by Miller could] be answered by direct reference to the materials," the district court concluded that the government set forth adequate reasons for its conduct and that there was nothing to suggest that the grand jury process was abused. Therefore, the court denied Miller an evidentiary hearing.[9] *Miller I,* 510 F.Supp. at 585. Since the district court carefully viewed Miller's allegations in light of the requested documents, we find that the court did not abuse its discretion and affirm its finding.

B. *Hearing Regarding Disclosure to the IRS*

■ Congress did not intend to preclude the use of grand jury developed evidence for civil law enforcement purposes. In fact, Congressman Wiggins of the House Judiciary Committee noted that when the grand jury uncovers violations of civil laws, it is the duty of the attorney for the government to turn that information over to the appropriate governmental agency *after* successfully seeking an order of the court. 123 Cong.Rec. 15196 (1977) (emphasis added). In determining whether to grant disclosure pursuant to Rule 6(e), however, it is unclear whether the court's hearing should be *ex parte* or adversary.[10] *See generally* Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure, Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, at 3–5, 11–17, *reprinted in* 660 F.2d 1, 15–17, 23–29 (advance sheets) (October 1981); Kirkland, "Administrative Agency Access to Grand Jury Material Under Amended Rule 6(e)," 29 Case W.L.Rev. 295, 320 n.157 (1978) (hereinafter cited as "Administrative Agency Access").

■ The legislative history of Rule 6(e) is equivocal. The rule was modified by Congress in 1976. These modifications were intended to reaffirm the long-established policy of grand jury secrecy while at the same time providing a procedure to facilitate the appropriate release of grand jury material. The Senate Report states a preference for *ex parte* proceedings "so as to preserve, to the maximum extent possible, grand jury secrecy." S.Rep.No.95–354, 95th Cong., 1st Sess. 8, *reprinted in* 1977 U.S.Code Cong. & Ad.News 527, 532; *cf.* Preliminary Draft to Proposed Amendments, at 3 (if government seeks disclosure for its own use, hearing shall be *ex parte* ). In contrast, Representative Mann noted that the rule "is not intended ... to state a preference for how a court application should be made, whether *ex parte* or by notice to an adversary party." 123 Cong. Rec. 25195 (1977).

The court's handling of the issue also varies. In several Rule 6(e) order cases, the hearing was adversary in nature. *See, e.g., Sarbaugh,* 552 F.2d at 773; *United States v. Interstate Dress Carriers, Inc.,* 280 F.2d 52 (2d Cir. 1960); *Application of California,* 195 F.Supp. 37 (E.D.Pa.1961). In a case interpreting the amended rule, however, the court adopted the Senate Report's position requiring *ex parte* proceedings. *In re December 1974 Term Grand Jury Investigation,* 449 F.Supp. 743, 751 (D.Md.1978).

Recently, the Ninth Circuit concluded that Congress did not intend to preclude a court from hearing objections to disclosure from a party such as Miller. *Sells,* 642 F.2d at 1192; *see generally Douglas Oil Co. v.*

---

9. The decision to deny a hearing was influenced by the court's finding that Miller had not demonstrated sufficient particularized need to obtain disclosure pursuant to Rule 6(e). See note 7, *supra,* and note 10, *infra; see* Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure, Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, at 4-5, 15–17 (October 1981) (in disclosure proceeding pursuant to proposed subdivision (e)(3)(D), court shall order hearing on matters affecting a grand jury proceeding to be closed to the extent necessary to prevent disclosure of matters which have occurred before a grand jury).

10. The procedure at the district court was not completely *ex parte* because the court allowed Miller and the four grand jury witnesses to intervene. *Miller I,* 510 F.Supp. at 586–87.

*Petro Stops Northwest,* 441 U.S. 211, 218 n.8, 99 S.Ct. 1667, 1672 n.8, 60 L.Ed.2d 156 (1979). As we recognized in *Sarbaugh,* 552 F.2d at 773, Miller is among those who could be adversely affected by disclosure and is likely to be one of the few to object to an order for disclosure. Although the court of appeals in *Sells* directed the district court to consider the objections to disclosure, it left to the "district court to determine in the first instance, with reference to the policies underlying grand jury secrecy, whether adversary hearings should be held regarding ... materials [which appellants do not own and materials which appellants are not familiar with] to which the government seeks access." *Sells,* 642 F.2d at 1192; *see also In re Grand Jury Subpoenas, April, 1978,* 581 F.2d at 1110 ("evidentiary hearing ... *might* be necessary before disclosure is ordered") (emphasis added).

 The district court permitted Miller to intervene in the disclosure proceeding and allowed both sides to present their position. The right to be heard, however, does not mean Miller should have access to the requested grand jury materials without a showing of particularized need and then an opportunity in an adversary proceeding to voice its concerns. The district court found that Miller did not meet its burden to justify disclosure to it. Moreover, since the district court viewed the requested materials *in camera,* it was in the best position to determine that an adversary hearing was not necessary.

### IV. The Application of Federal Rule of Criminal Procedure Rule 6(e)

At the outset, we address Miller's contention that "it is not clear if the district court was proceeding under Rule 6(e) or its supervisory powers." The district court clearly indicated that the government's petition seeking disclosure was pursuant to Rule 6(e). *Miller I,* 510 F.Supp. at 586. Moreover, this court noted in *In re Special February, 1975 Grand Jury (Baggot),* 662 F.2d 1232, 1236 (7th Cir. 1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 2955, 73 L.Ed.2d 1347 (1982), that "[w]e may not always be bound by a strict and literal interpretation of Rule 6(e) in the situation where there is some

extraordinary and compelling need for disclosure in the interest of justice ... but as important as taxes are, their determination, assessment and collection does not satisfy that standard." Therefore, we make it clear that the government's petition and our analysis is pursuant to Rule 6(e).

 Rule 6(e) codifies the traditional practice of grand jury secrecy. With specified exceptions, it prohibits grand jurors, interpreters, stenographers, operators of recording devices, typists, government attorneys, or any person to whom disclosure is made under paragraph (3)(A)(ii) from disclosing "matters occurring before the grand jury." One exception to the general rule of secrecy is "when so directed by a court preliminarily to or in connection with a judicial proceeding." Fed.R.Crim.P. 6(e)(3)(C)(i). Moreover, the Supreme Court has established a rule of judicial interpretation that the secrecy of grand jury proceedings will not be broken except where the party seeking disclosure can show a "compelling necessity" or "particularized need." *Douglas Oil Co.,* 441 U.S. at 222–23, 99 S.Ct. at 1674–75; *Dennis v. United States,* 384 U.S. 855, 872, 86 S.Ct. 1840, 1850, 16 L.Ed.2d 973 (1966); *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 400, 79 S.Ct. 1237, 1241, 3 L.Ed.2d 1323 (1959); *Procter & Gamble,* 356 U.S. at 682–83, 78 S.Ct. at 986; Preliminary Draft of Proposed Amendments, at 8 ("[particularized need] language has not been added to the rule, and thus the applicability and meaning of that standard is left to further development in the case law"). In determining whether disclosure of grand jury matters is appropriate in any given case, a court must exercise substantial discretion, weighing the need for secrecy against the need for disclosure of specified documents and testimony occurring before the grand jury. *Douglas Oil Co.,* 441 U.S. at 223–24, 99 S.Ct. at 1675. Disclosure is left to the sound discretion of the district court and will not be reversed in the absence of an abuse of discretion. *Id.* at 223, 228, 99 S.Ct. at 1675, 1677; *Pittsburgh Plate Glass,* 360 U.S. at 399, 79 S.Ct. at 1240; *Sells,* 642 F.2d at 1191; *In re Grand Jury Proceedings (Wright II),* 654 F.2d 268,

272 (3d Cir.), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981); *Sobotka,* 623 F.2d at 768; *Bast v. United States,* 542 F.2d 893, 897 (4th Cir. 1976).

■ On appeal, Miller argues that the district court erred in its assessment of the need for secrecy and the need for disclosure and that the government [11] failed to demonstrate a particularized need for the documents. In response, the government first urges that the documents examined by the grand jury are not subject to the secrecy provisions of Rule 6(e) because they are not "matters occurring before the grand jury." *In re Grand Jury Investigation (New Jersey State Commission of Investigation),* 630 F.2d 996 (3d Cir. 1980), *cert. denied,* 449 U.S. 1081, 101 S.Ct. 865, 66 L.Ed.2d 805 (1981); *SEC v. Dresser Industries, Inc.,* 628 F.2d 1368 (D.C.Cir.), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980); *United States v. Stanford,* 589 F.2d 285 (7th Cir. 1978), *cert. denied,* 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979); *United States v. Interstate Dress Carriers, Inc.,* 280 F.2d 52 (2d Cir. 1960). Alternatively, the government contends that if the requested materials are "matters occurring before the grand jury," it demonstrated that the "matters sought . . . are rationally related to an existing judicial proceeding or to one which is reasonably anticipatible and [that] the grand jury investigation was conducted in good faith." If that standard is improper, however, the government finally argues that the district court correctly assessed the competing needs for secrecy and disclosure when it concluded that the government made a sufficient showing of particularized need to justify disclosure of the documents under Rule 6(e).

**A. "Matters Occurring Before the Grand Jury"**

■ Rule 6(e) was intended to protect against disclosure of what actually took place during the grand jury proceedings. Therefore, the policy of secrecy and required showing of particularized need for disclosure of grand jury material applies only to "matters occurring before the grand jury." *See generally* Annot., 50 A.L.R.Fed. 675 (1980). In *Stanford,* this court explained the distinction between documents subpoenaed and examined by a grand jury and "matters occurring before the grand jury":

> Unless information reveals something about the grand jury proceedings, secrecy is unnecessary. . . . Unlike testimony, documents are created for purposes other than the grand jury investigation; they are therefore more likely to be useful for purposes other than revealing what occurred before the grand jury. Persons may have a legitimate interest in documents so that disclosure of them does not constitute disclosure of matters occurring before the grand jury.

589 F.2d at 291. Thus, when a particular document is sought only "for its own sake—for its intrinsic value in the furtherance of a lawful investigation," it does not necessarily constitute a matter occurring before the grand jury. *Interstate Dress Carriers,* 280 F.2d at 54.

■ A request for grand jury documents may evoke different, and less exacting, considerations than a request for transcripts of grand jury testimony. *Stanford,* 589 F.2d at 291; *Sarbaugh,* 552 F.2d at 772 n.2. This reasoning has led some courts to comment that documents may not fall within the ambit of Rule 6(e)'s secrecy requirement. *United States v. Weinstein,* 511 F.2d

11. At the district court, Miller also requested disclosure of five of the eight categories the government petitioned to disclose. The court noted that "[t]he standard of law applicable here is whether Miller had demonstrated a 'particularized need' for the material in question." *Miller I,* 510 F.Supp. at 587. The court balanced Miller's allegation "that an examination of the grand jury material . . . is necessary . . . to demonstrate the true purposes of the commencement of the grand jury investigation"

against the policy of grand jury secrecy. *Id.* The court considered the fact that four individual intervenors objected to disclosure, that some of the requested material was subpoenaed from Miller's largest competitor, and that Miller was the target of the grand jury. The district court could properly find that "Miller has [not] made an argument of potential abuse of this grand jury which is sufficient to outweigh the policy of secrecy." *Id.* at 588.

622, 627 n.5 (2d Cir.), *cert. denied*, 422 U.S. 1042, 95 S.Ct. 2655, 45 L.Ed.2d 693 (1975); *In re Grand Jury Investigation of Ven-Fuel*, 441 F.Supp. 1299, 1303 (M.D.Fla.1977); *see generally* Preliminary Draft of Proposed Amendments, at 6. This court's view, however, is that Rule 6(e) is applicable in a general way to both documents and testimony before the grand jury. *Baggot*, 662 F.2d at 1237–38; *Interstate Dress Carriers*, 280 F.2d at 54; *SEC v. Everest Management Corp.*, 87 F.R.D. 100, 105 (S.D.N.Y. 1980); *Corona Constr. Co. v. Ampress Brick Co.*, 376 F.Supp. 598, 601 (N.D.Ill.1974); *Application of California*, 195 F.Supp. 37 (E.D. Pa.1961); Preliminary Draft of Proposed Amendments, at 2–3, 6, 8–10; *cf. Stanford*, 589 F.2d at 291 n.6 ("We do not mean to say that disclosure of documents is never subject to Rule 6(e).")

■■■ The question remains, however, whether the requested documents in this case are "matters occurring before the grand jury." The district court has wide discretion in determining whether documents reveal the inner workings of the grand jury.

> Only those subpoenaed documents should be subject to Rule 6(e) which when reasonably considered in the context of the particular grand jury investigation are determined by the trial court to reveal some secret aspect of the grand jury investigation .... The trial judge who is

thoroughly familiar with the grand jury proceeding should be accorded wide discretion in that determination.

*Baggot*, 662 F.2d at 1244.

■■■ The district court considered the requested documents apart from the grand jury testimony. It noted that the interest in grand jury secrecy is lower when the requested material includes only documentary evidence. The district court found that disclosure of these materials is "not so likely to reveal delicate matters before the grand jury [nor] the reasons why the grand jury sought the materials or what significance the grand jury attached· to the documents." *Miller II*, 518 F.Supp. at 168.[12] Nonetheless, the court treated the documents as "matters occurring· before the grand jury" since it proceeded to determine whether the government had made a showing of particularized need sufficient to outweigh the interest in grand jury secrecy. We uphold the district court's finding that the requested documents are "matters occurring before the grand jury." [13]

### B. Particularized Need

■■■ Particularized need is not an absolute standard. Before releasing grand jury materials, a court must balance the need of the party seeking disclosure against the effect such disclosure would have on the policies underlying grand jury secrecy.[14]

---

**12.** Disclosure is less likely to reveal the inner workings of the grand jury here because the items sought do not constitute the complete criminal file, but only selected documents and testimony. Any breach of grand jury secrecy should be discrete and limited. *Sobotka*, 623 F.2d at 768, 769; *Bast*, 542 F.2d at 896. The government requested these materials with specificity, rather than with a sweeping request for all materials before the grand jury. *Davis v. Romney*, 55 F.R.D. 337, 342 (E.D.Pa.1972); Administrative Agency Access, 29 Case W.L. Rev. at 308.

**13.** We note that the district court would have reached the same result if it had found that the documents were not "matters occurring before the grand jury" because the documents revealed nothing about the grand jury proceedings and were sought "for [their] own sake— for [their] intrinsic value in furtherance of a lawful investigation." *Interstate Dress Carriers*, 280 F.2d at 54; *Stanford*, 589 F.2d at 291;

*Baggot*, 662 F.2d at 1240–41 (Pell, J., dissenting).

**14.** The Supreme Court has recognized the following reasons for grand jury secrecy:

> to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; [and] to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial, where there was no probability of guilt.

*Douglas Oil Co.*, 441 U.S. at 219 n.10, 99 S.Ct. at 1673 n.10; *Procter & Gamble*, 356 U.S. at 681–82 n.6, 78 S.Ct. at 986 n.6, *quoting United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir. 1954). Moreover, "the grand jury as a public institution serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow." *Procter & Gamble*, 356 U.S. at 682, 78 S.Ct. at 986.

As considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification for disclosure. *Douglas Oil Co.*, 441 U.S. at 223, 99 S.Ct. at 1675; *Sarbaugh*, 552 F.2d at 768. Although the grand jury was terminated a year before the court ordered disclosure, not all the policies underlying the need for grand jury secrecy are eliminated. *In re Grand Jury Investigation of Cuisinarts, Inc.*, 665 F.2d 24, 33 (2d Cir. 1981); *Sobotka,* 623 F.2d at 766–67; *In re April 1956 Term Grand Jury*, 239 F.2d at 272; Annot., 52 A.L.R.Fed. 411, 416 (1981).[15]

### (1) *The Applicable Standard Under Rule 6(e)*

The issue of what standard to apply to federal agencies is somewhat unclear. *In re J. Ray McDermott & Co.*, 622 F.2d 166, 171–72 (5th Cir. 1980); 8 J. MOORE, MOORE'S FEDERAL PRACTICE ¶ 6.05[4][b] (2d ed. 1981); *cf. Sells*, 642 F.2d at 1191 (Ninth Circuit rejected government's contention that Department of Justice attorneys had absolute right of access to grand jury materials for civil use). The government contends that it need not show particularized need, but only the "less stringent standard" that "the matters sought ... are rationally related to an existing judicial proceeding or to one which is reasonably anticipatible and [that] the grand jury investigation was conducted in good faith." *In re Grand Jury, Misc. No. 979*, 583 F.2d 128, 131 & n.2 (5th Cir. 1978); *In re Grand Jury Subpoenas, April, 1978, at Baltimore*, 581 F.2d at 1109–10; *In re December 1974 Term Grand Jury Investigation*, 449 F.Supp. at 751. The government relies on cases which require *private parties* to demonstrate particularized need in order to obtain disclosure of grand jury materials. *See, e.g., Douglas Oil Co.*, 441 U.S. at 223, 99 S.Ct. at 1675. *But see In re Illinois Petition to Inspect & Copy Grand Jury Materials, Appeal of State of Illinois*, 659 F.2d 800, 804 (7th Cir. 1981), *cert. granted sub nom. Illinois v. Abbott & Associates, Inc.*,

—— U.S. ——, 102 S.Ct. 1708, 72 L.Ed.2d 132 (1982) (rejecting State's attempt to distinguish cases in which particularized need standard was required on basis that disclosure in those cases was sought by private parties). Moreover, the government relies on cases which have commented that the fact that the party seeking disclosure is a federal agency will serve to reduce or modify the burden. *See, e.g., Sobotka*, 623 F.2d at 767–68; *Baker v. United States Steel Corp.*, 492 F.2d at 1079; *SEC v. Everest Management Corp.*, 87 F.R.D. at 105; *In re December 1974 Term Grand Jury Investigation*, 449 F.Supp. at 750–51. From these cases, the government argues that a different standard is applied when disclosure is sought by or on behalf of federal administrative agencies for use in existing or contemplated judicial proceedings.

▓▓▓▓ A showing of rational relationship between the materials and the civil proceeding may explain the government's desire for disclosure, but does not determine the degree of necessity. *Sells*, 642 F.2d at 1192. We prefer a standard which requires all parties to establish particularized need and which affords governmental agencies no special treatment. *Procter & Gamble*, 356 U.S. at 685, 78 S.Ct. at 988 (Whittaker, J., concurring); *Sells*, 642 F.2d at 1191–92 (court rejected government's contention that disclosure should be granted if the materials are "rationally related to civil matters within the duty of the attorney for the government"); *In re Grand Jury Proceedings*, 309 F.2d 440 (3d Cir. 1962) (rejecting disclosure based on showing that the "grand jury evidence [would] be material and useful to a lawful function of the agency"); *In re Proceedings Before the Federal Grand Jury for the District of Nevada*, 487 F.Supp. 1098, 1100 n.2 (D.Nev.1980) (court found the government's argument for a lower standard "unpersuasive"); *In re Grand Jury Investigation*, 414 F.Supp. 74 (S.D.N.Y.1976) (SEC required to show "particularized need" for disclosure of grand jury transcripts for use in subsequent civil

---

**15.** Miller's argument that it should be protected from disclosure of the fact that it has been under investigation is of limited force in this case since 26 U.S.C. § 6103 prohibits the IRS from disseminating tax information to the public. Public disclosure would occur, however, if the grand jury materials are introduced into evidence in the tax court proceedings.

proceeding); Administrative Agency Access, 29 Case W.L.Rev. at 332 (government can use information only if it meets the same test as any party to a civil proceeding). As a practical matter, however, it may be easier at times for the government, rather than a private party, to meet the standard. Just because it is the government which seeks the grand jury material for its civil purposes does not mean that the court is stripped of its discretion to consider who the parties are and their purpose for seeking disclosure. Although the fact that the party seeking disclosure is a federal agency may weigh heavily in the district court's exercise of discretion, the application of the particularized need requirement to all requesting parties is a safeguard for the grand jury because it tends to prevent it from being used as an instrument for explorations in aid of civil proceedings. *In re April 1956 Term Grand Jury*, 239 F.2d at 271–72.[16]

### (2) *Documentary Materials*

The district court considered the documentary evidence apart from the transcripts in determining whether the government had demonstrated particularized need. The court first addressed the government's contention that "it would be expensive and wasteful to require the government to duplicate the efforts of the grand jury" and Miller's response that "convenience and cost savings are not sufficient ... to constitute particularized need ...." *Miller II*, 518

F.Supp. at 168. The court distinguished the cases Miller relied upon by noting that in each of those cases "a party other than the federal government was either seeking access to the actual grand jury transcripts or also the names of the witnesses who testified ...." *Id.* It noted that "[w]asteful duplication of effort is a valid, but not controlling, consideration ...." *Id.*

 We agree with Miller that cost considerations are not usually enough by themselves to constitute particularized need. *Procter & Gamble*, 356 U.S. at 682, 78 S.Ct. at 986; *cf. Smith v. United States*, 423 U.S. 1303, 1304, 96 S.Ct. 2, 3, 46 L.Ed.2d 9 (1975) (saving of resources and refreshing memories of witnesses always present whenever state conducts an investigation following a similar one by federal grand jury). In response to the government's similar argument in *Baggot*, we noted that "[a] liberal disclosure policy in tax cases would no doubt facilitate tax collection but it would also create a temptation to abuse the grand jury process." 662 F.2d at 1237; *see also Sobotka*, 623 F.2d at 768 n.5; *In re Holovachka*, 317 F.2d 834, 837–38 (7th Cir. 1963). The district court, however, balanced a number of factors against its finding of only a minimal need for secrecy in determining whether there was particularized need.

 The government's affidavit indicated that at least some of the documents no longer existed outside of the grand jury materials.[17] The court considered that dis-

---

16. In the past, courts have often invoked the standard of particularized need when a party in a subsequent civil suit sought grand jury testimony for relatively narrow evidentiary purposes, such as impeaching a witness, *Procter & Gamble*, 356 U.S. at 683, 78 S.Ct. at 986–87, attacking deposition testimony, *Atlantic City Electric Co. v. A. B. Chance Co.*, 313 F.2d 431 (2d Cir. 1963), or refreshing a witness' recollection, *Baker*, 492 F.2d at 1079; *see also Wisconsin v. Schaffer*, 565 F.2d 961, 966 (7th Cir. 1977); Administrative Agency Access, 29 Case W.L.Rev. at 324. In this case, however, the IRS is interested in the documents, not for such collateral purposes, but rather for the merits of the agency's case. The applicability of grand jury secrecy and the admissibility of grand jury material as evidence are distinct inquiries. *See United States v. Allison*, 474 F.2d 286, 288 (5th Cir. 1973), *cert. denied*, 419 U.S. 851, 95 S.Ct.

91, 42 L.Ed.2d 82 (1974). The fact that the documents involved will be used to prove the merits of the agency's case should not affect the court's analysis of whether the government demonstrated particularized need.

17. It is somewhat troubling that no showing has been made that the usual channels of discovery have proved fruitless or that they have even been diligently pursued. *See Baker*, 492 F.2d at 1080 (Lumbard, J., dissenting). The IRS has effective statutory means to accomplish its civil purposes. 26 U.S.C. § 7602. With respect to the documents, this is perhaps understandable since the district court found that this material was unlikely to reveal the workings of the grand jury and thus the need for grand jury secrecy was low. With respect to the transcript, however, the district court noted that "the government must first attempt

closure might affect the willingness of witnesses to testify freely and candidly before future grand juries, but found this consideration less relevant here since the requested disclosure relates to the government's civil tax authorities, not to the target of the grand jury.[18] The court also noted that the government's tax investigators are required to maintain the secrecy of items disclosed for civil tax purposes. 26 U.S.C. § 6103. Moreover, the court found it significant that none of the third parties whose documents were to be disclosed intervened to object. Finally, the district court independently reviewed the documentary evidence subpoenaed from Miller and various other third parties. We affirm its conclusion that the government made a showing of particularized need sufficient to outweigh the interest in grand jury secrecy that was present.

### (3) Transcript of Grand Jury Testimony

The district court also considered the government's request for disclosure of transcripts of the testimony of four current or former employees of Miller. These transcripts are verbatim records of the workings of the grand jury. Miller and the four intervenors whose testimony was requested object to disclosure and state they are willing to give testimony pursuant to an IRS summons. The court denied disclosure of the requested transcripts because it found that the government failed to make a showing of particularized need sufficient to justify such disclosure.

On appeal, the government concedes that it did not meet the particularized need requirement as it was applied by the court, but argues that a less stringent standard of need should have been applied. We have already held that the government must

meet the same particularized need standard as any private litigant. Therefore, we find that the district court properly refused to grant access to the transcripts of the grand jury proceedings.

### C. Disclosure "Preliminarily to or in connection with a Judicial Proceeding"

#### (1) Timing of the Request

▮ In October, 1980, when the government filed its petition for disclosure, the IRS was in the process of an administrative examination to determine Miller's civil tax liability. The petition requested disclosure to "the district counsel of the Internal Revenue Service, Milwaukee . . . and two revenue agents of the examination division of the Internal Revenue Service . . . and . . . any other agent subsequently assigned to the civil tax examination of the Miller Brewing Company." Miller and the district court were kept apprised of the IRS' progress and intentions. The IRS completed its investigation and issued a statutory notice of deficiency on March 16, 1981. The district court issued its decision and order in June, 1981, authorizing disclosure to the government.[19] Two days later, Miller petitioned the tax court for a redetermination of deficiencies asserted in the notice.

Miller now argues that the district court's order should be reversed because the government's petition was moot. Miller contends that the purpose for which the petition was originally filed could no longer be served when the court issued its order, and the requested materials were no longer of value to the investigators named in the petition. Miller suggests that if the government seeks disclosure for use in any further administrative examination or in the tax court proceedings, it should file another petition and Miller again should

---

to interview the four intervenors to determine their willingness to cooperate." *Miller II*, 518 F.Supp. at 169. Since the government had not done this, the district court properly found no particularized need.

18. Since the party seeking disclosure is a federal agency, there is less chance of the improper purpose of harassing, embarrassing or otherwise attempting to harm grand jury witnesses or the subject of the investigation. Grand jury

witnesses should have no reason to fear retaliation from the government as a result of their testimony. Therefore, disclosure will be less likely to affect the willingness of witnesses to testify before future grand juries. *See In re Grand Jury*, 583 F.2d 128, 131 (5th Cir. 1978); *see also* notes 12, 13, *supra*.

19. The government designated the Acting District Counsel of the IRS in New York to receive the documents.

have an opportunity to respond to the government's request for disclosure.

Although Miller's argument might be valid under some circumstances, it is not of force in this case. The district court's weighing of particularized need would not change based on the potential difference in use of the documents since both the administrative examination and the tax court litigation was to determine Miller's civil tax liabilities and the documents relevant to the examination would be no less relevant to the litigation. The IRS kept the court and Miller apprised of its progress and the court gave Miller time to respond on the merits to the government's petition. Finally, the district court noted that Miller was in no way prejudiced by the change of circumstances between October 1, 1980 and June 23, 1981. The district court acted within its discretion.

(2) *Was Disclosure "Preliminarily to or in Connection With a Judicial Proceeding?"*

■ Rule 6(e) requires that disclosure be "preliminarily to or in connection with a judicial proceeding." Intervenors/appellants argue that the tax authorities' proposed use of the Miller material is not preliminary to a judicial proceeding within the meaning of Fed.R.Crim.P. 6(e)(3)(C)(i). The judicial proceeding contemplated in Rule 6(e) refers to the proceeding that might be initiated by the taxpayer in the tax court if the taxpayer chooses not to pay any deficiency assessment and challenges the assessment, 26 U.S.C. § 6213(a), or in the district court if the taxpayer chooses to pay the deficiency assessment and then seeks its return, 28 U.S.C. § 1346(a)(1). It also could refer to a proceeding initiated by the IRS if the taxpayer neither pays the deficiency nor contests the assessment. *See In re 1978–1980 Grand Jury Proceedings*, 503 F.Supp. 47, 48 (N.D.Ohio 1980).

We recently addressed this issue in *Baggot*, 662 F.2d at 1235, 1238–39. *But see In re Judge Elmo B. Hunter's Special Grand*

*Jury*, 667 F.2d 724, 727–28 (8th Cir. 1981). In *Baggot*, no deficiency had been assessed. Whether there would ever be a judicial proceeding depended on whether a deficiency was ever assessed, and then whether Baggot decided to pay or contest it. Therefore, we found "that the ... Internal Revenue Service civil investigation of Baggot's possible additional tax liabilities is too embryonic, speculative, and uncertain to firmly say that it is 'preliminarily to' a judicial proceeding." *Baggot*, 662 F.2d at 1239; *see In re April 1977 Grand Jury Proceedings*, 506 F.Supp. 1174 (E.D.Mich.1981); *In re 1978–1980 Grand Jury Proceedings*, 503 F.Supp. at 48.

■ The situation in *Miller*, however, is quite different since the tax investigation is more advanced. At the time that the district court permitted disclosure of the grand jury documents to the government, it could be certain that there would be a "judicial proceeding" of some kind. The government had assessed a deficiency and Miller stated in an affidavit that it "will be compelled, within 90 days of the issuance of such statutory notice of deficiency, to commence an action contesting such deficiencies in the United States Tax Court." Moreover, Philip Morris did, in fact, petition the tax court after the deficiency was assessed. Therefore, disclosure was "preliminarily to or in connection with a judicial proceeding." [20] *Cf. Patrick v. United States*, 524 F.2d 1109 (7th Cir. 1975) (district court could reasonably anticipate that a judicial proceeding would arise out of a contest over taxpayer's *failure to file any tax returns* when he admittedly had received income and when IRS had entered a jeopardy assessment based in part on grand jury testimony) (emphasis added).

## V. Grand Jury Transcripts

### A. The District Court's Finding

The government advanced similar reasons for disclosure of the grand jury transcripts

---

**20.** Intervenors also contend that the disclosure order invites forum shopping since the government can choose where the disclosure decision will be made, depending on where it files suit seeking payment of the deficiency. The choice of forum, however, was also Miller's since Phil-

ip Morris could file suit in the tax court to challenge the assessment. Since Philip Morris did, in fact, initiate a deficiency contest in the tax court, we reject intervenors' suggestion of impropriety.

that it advanced for disclosure of the documents. The four individuals whose testimony is recorded on the transcripts objected to disclosure, stating that they were willing to testify pursuant to an IRS summons. The government, however, contended that the grand jury testimony was more likely to be truthful than interviews pursuant to an IRS summons because some of the intervenors asserted their Fifth Amendment rights during interviews prior to the impanelment of the grand jury, and those individuals eventually testified under grants of immunity.

The court found that since the transcripts were verbatim records of the workings of the grand jury, the interest in preserving grand jury secrecy was high. Although the government's reasons for disclosure were much the same, the district court balanced the competing interests differently since convenience and lessened cost are less significant when balanced against the need for secrecy of grand jury transcripts. The court concluded that the government did not make a sufficient showing of particularized need "at this stage of these proceedings."[21] Accordingly, it denied access to the transcripts without prejudice to its being renewed upon a sufficient showing of particularized need. It further stated:

> This court is not necessarily the appropriate one to review a renewed petition; further proceedings regarding [the transcripts] should be held *before the court that hears the government's claims against Miller....* I will direct that [the transcripts] be retained by the clerk of court until such time as the government communicates to such clerk the location and identity of the *court before which the tax litigation shall proceed.* After such

communication, the clerk is to release [the transcripts] to that court for whatever *in camera* inspection is necessary in light of a renewed petition for disclosure. *See Douglas Oil,* 441 U.S. at 228–31, 99 S.Ct. at 1677–79.

*Miller II,* 518 F.Supp. at 170 (emphasis added).

**B.** *The Transfer Procedure*

Rule 6(e) permits disclosure of occurrences before the grand jury "only when so directed by the court." Although Rule 6(e)(3)(C)(i) does not, by its terms, specify which court should make the ruling on disclosure, requests for materials are usually directed to the court that supervised the grand jury's activities. *See Douglas Oil Co.,* 441 U.S. at 226, 99 S.Ct. at 1676; *In re Grand Jury Proceedings (Wright II),* 654 F.2d at 271, 272; *Socialist Workers Party v. Grubisic,* 619 F.2d 641, 644 (7th Cir. 1980); *Sarbaugh,* 552 F.2d at 772–73 n.5; *Gibson v. United States,* 403 F.2d 166, 167 (D.C.Cir. 1968). The grand jury supervisory court has first-hand knowledge of the need for secrecy and has the responsibility for enforcing Rule 6(e). *Douglas Oil Co.,* 441 U.S. at 225–26, 99 S.Ct. at 1676.

Often, however, the court in which subsequent charges are pending is not the same court that supervised the work of the grand jury investigation. The court with the pending litigation will be the most competent court to evaluate the need for the requested grand jury material. *See, e.g., Bast,* 542 F.2d at 897 n.5. In *Douglas Oil Co.,* the Court suggested an appropriate procedure in such a situation. 441 U.S. at 226, 99 S.Ct. at 1676. The party seeking disclosure first moves for disclosure in the district where the grand jury sat. The district court which supervised the grand jury then makes a written evaluation of the need for continued secrecy[22] and deter-

---

**21.** The court noted that if the government was seeking access to the transcripts for impeachment purposes or because the testimony was unavailable, it might then have demonstrated sufficient particularized need to outweigh the interest in secrecy. *See* note 14, *supra.* Moreover, it suggested that the government attempt to interview the four intervenors to determine their willingness to cooperate. Several courts have discussed the need for disclosure in terms of the ability of the party seeking disclosure to obtain the sought-after material from some oth-

er source. *See, e.g., In re Disclosure of Testimony Before the Grand Jury (Troia),* 580 F.2d 281, 286 (8th Cir. 1978); *United States v. Moten,* 582 F.2d 654 (2d Cir. 1978); 8 J. MOORE, MOORE'S FEDERAL PRACTICE ¶ 6.05 (2d ed. 1981).

**22.** The Supreme Court has indicated that before a transfer can take place, the supervising court must make a written evaluation of the need for continued secrecy and a determination that the evidence before it showed that disclosure might be appropriate. Judge Gordon

mines whether the evidence before it justifies disclosure.[23] If the court decides that disclosure may be appropriate, it transfers the requested grand jury materials to the district court where the current case is pending. Finally, the court with the pending litigation determines particularized need and balances it against the continued need for secrecy as expressed by the first court. *Douglas Oil Co.,* 441 U.S. at 227–28, 99 S.Ct. at 1677. In *Sarbaugh,* this court noted that such a procedure is "eminently sensible and . . . within the power of the court of the district in which the grand jury is convened." *Sarbaugh,* 552 F.2d at 773 n.5; *see also Grubisic,* 619 F.2d at 644; *In re 1975–2 Grand Jury Investigation of Associated Milk Producers, Inc.,* 566 F.2d 1293 (5th Cir.), *cert. denied,* 437 U.S. 905, 98 S.Ct. 3092, 57 L.Ed.2d 1135 (1978); *Wisconsin v. Schaffer,* 565 F.2d 961 (7th Cir. 1977).

The Court in *Douglas Oil Co.,* however, made it clear that the method adopted there was not the only permissible one.[24] "Circumstances that dictate the need for cooperative action between the courts of different districts will vary." *Id.* 441 U.S. at 231, 99 S.Ct. at 1679; *see also In re Grand Jury Proceedings (Wright),* 625 F.2d 1106 (3d Cir. 1980), *aff'd (Wright II),* 654 F.2d 268 (3d Cir.), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981). The aim is to have the court best informed

on the question of need for secrecy and the court best informed on the need for disclosure evaluate those needs in the most efficient way possible. *In re J. Ray McDermott & Co.,* 622 F.2d at 172. Therefore, several courts have utilized somewhat different procedures. *See, e.g., In re Grand Jury Proceedings (Wright II),* 654 F.2d at 272–75; *Sobotka,* 623 F.2d at 769 n.6; *Sarbaugh,* 552 F.2d at 773; *Baker,* 492 F.2d at 1076–77; *Gibson v. United States,* 403 F.2d 166 (D.C.Cir.1968); *United States v. Alston,* 491 F.Supp. 215, 216–17 (D.C.Cir.1980).

### C. Procedure in this Case

 Absent rule making by Congress, the district court retains discretion to assess the need for, and extent of cooperative action. *Douglas Oil Co.,* 441 U.S. at 228, 99 S.Ct. at 1677; *Dennis,* 384 U.S. at 870, 86 S.Ct. at 1849; *In re Grand Jury Proceedings (Wright II),* 654 F.2d at 274; *Wisconsin v. Schaffer,* 565 F.2d at 965. The question therefore is whether the district court properly allocated the responsibilities between the grand jury court which is in a position to evaluate the need for secrecy and the tax court which can assess the government's need for disclosure. In this case, a procedure which vests the final disclosure decision with the grand jury supervisory court is more appropriate than the

made a minimal written finding saying that the need for secrecy was "high," and that disclosure of the transcripts was not appropriate given the evidence at that point in the case.

**23.** The court may hold that disclosure is inappropriate at this point. The Supreme Court, however, noted that to make the disclosure decision without knowledge of the pending proceedings or without obtaining the views of the court with jurisdiction over the civil proceedings was an abuse of discretion. *Douglas Oil Co.,* 441 U.S. at 228–30, 99 S.Ct. at 1677–78 (Stevens, J., dissenting); *In re Grand Jury Proceedings (Wright II),* 654 F.2d at 273.

**24.** The Court cited *Baker v. United States Steel Corp.,* 492 F.2d 1074 (2d Cir. 1974) and *Gibson v. United States,* 403 F.2d 166 (D.C.Cir.1980) with approval. In those cases, the party seeking disclosure first applied to the court where the subsequent proceedings were located and that court either certified to the court where the grand jury sat that there was a particularized need for the material or inspected the

requested material and advised the district court as to its relevancy. If the court certified the matter to the grand jury court, the supervisory court was then in a position to balance the need for disclosure against the need for secrecy. In *United States v. Allston,* 491 F.Supp. 215 (D.D.C.1980), the court noted that *Gibson* and *Baker* survived *Douglas Oil Co. Id.* 447 U.S. at 216–17, 99 S.Ct. at 1671–72.

In requiring the movant to file first in the district with the pending litigation, the court may be put in the position of deciding whether there is particularized need for material which it has never seen. 8 J. Moore, Moore's Federal Practice ¶ 6.05[7] n.123. The parties, however, will in most cases be able to describe the requested materials sufficiently for the court to make its decision. Moreover, the court could view the materials *in camera* before determining whether there is particularized need. *See, e.g., Philadelphia v. Westinghouse Electric Corp.,* 210 F.Supp. 486, 491 (E.D.Pa.1962).

procedure established by the district court for a number of reasons.

Intervenors/appellants first note that at the time the court authorized transfer, there was no pending litigation since Miller had neither challenged the assessment, nor chosen not to pay the deficiency. Thus, they point out that there was no court—district or otherwise—to actually request disclosure. Therefore, the supervisory court could not knowledgeably ascertain whether the situation called for delegating the disclosure decision to the transferee court.

The district court, however, was certain that there would be some kind of "judicial proceeding." Furthermore, there is evidence that Judge Gordon contemplated that the latter proceeding would be in a federal district court, the proper forum when the taxpayer pays the deficiency and then sues for a refund which is so often the case.[25] If the transferee court had, in fact, been another federal district court, there would be no objection to the procedure established by the supervisory district court in this case.

Unlike other cases dealing with cooperative decision-making between courts, however, the transferee court in this case is the tax court, rather than another federal district court. Although the powers and business of the tax court are clearly judicial in nature, *Kenner v. Commissioner*, 387 F.2d 689, 690 (7th Cir.), *cert. denied*, 393 U.S. 841, 89 S.Ct. 121, 21 L.Ed.2d 112 (1968); H. Dubroff, "The United States Tax Court: An Historical Analysis [Part VII: The Jurisdiction of the Tax Court]," 42 Alb.L.Rev.

353, 438 (1978) (hereinafter cited as "Tax Court Jurisdiction"), the tax court is an Article I, legislative court with limited jurisdiction. The tax court possesses only such power as is conferred upon it by the Internal Revenue Code,[26] *Continental Equities, Inc. v. Commissioner*, 551 F.2d 74 (5th Cir. 1977); and its major jurisdiction involves the redetermination of tax deficiencies.[27] Tax Court Jurisdiction, 42 Alb.L.Rev. at 353. The Federal Rules of Criminal Procedure are expressly limited to the United States district courts, courts of appeal, and the Supreme Court. Fed.R.Crim.P. 54(a). It is reasonable to infer, therefore, that Congress intended a federal district court to make the Rule 6(e) disclosure determination. Moreover, the Tax Court Rules adopt the Federal Rules of Civil Procedure and Rules of Evidence, but not the Federal Rules of Criminal Procedure. Tax Court Rule 143(a). Therefore, it is not at all clear that the tax court has the power to order disclosure of federal grand jury materials.[28] *Cf. In re State of Illinois Petition to Inspect & Copy Grand Jury Materials*, 659 F.2d at 803 (district courts have exclusive authority under Rule 6(e) to order disclosure of grand jury materials) (dictum).

Of course, the tax court, in passing upon the admissibility of evidence, has decided questions of Fourth Amendment law and claims of abuse of grand jury process. *Ryan v. Commissioner*, 568 F.2d 531, 538 n.2 (7th Cir. 1977), *cert. denied*, 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978). Its basic work—determining the correctness of defi-

---

**25.** The district court's order notes that "further proceedings regarding item eight should be held before the Court that hears the Government's claims against Miller." *Miller II*, 518 F.Supp. at 170. If the government had initiated the proceeding, it would have been in a federal district court. Just the opposite, however, occurred, since Miller challenged the assessment in the tax court.

**26.** 26 U.S.C. § 7442 provides:
The Tax Court and its divisions shall have such jurisdiction as is conferred on them by this title, by chapters 1, 2, 3, and 4 of the Internal Revenue Code of 1939, by title II and title III of the Revenue Act of 1926 (44 Stat. 10 -87), or by laws enacted subsequent to February 26, 1926.

**27.** Its jurisdiction includes other subjects. For example, the court has the power to determine overpayments of tax and therefore a taxpayer's entitlement to a refund. The court can also review disputes arising as a result of jeopardy assessments. Additionally, the court may provide declaratory judgments with respect to the qualifications of pension plans, tax exempt organizations, and the tax effect of certain transfers of property from the United States. *See generally*, Tax Court Jurisdiction, 42 Alb.L.Rev. at 354.

**28.** Indeed, before *Douglas Oil Co.*, several courts indicated that disclosure powers were confined to the federal court that convened the grand jury. *In re Grand Jury Proceedings (Wright II)*, 654 F.2d at 273.

ciency assertions—cannot be accomplished in a vacuum. In order to properly interpret the applicable statutes, the court must resort to other bodies of law. This does not mean, however, that the tax court deals with the institution of the grand jury with the frequency and expertise that a district court possesses.

Our decision regarding the transfer process, however, does not turn on the sole question of whether the tax court has the power to rule on a disclosure request. Rather, it is an attempt to fashion the best procedure taking into account all the factors of this case. Clearly, the tax court will be helpful to the supervisory court in determining the need for the materials in the deficiency proceeding; but in light of the uncertainties surrounding the power of the tax court to decide such issues, a better procedure would be for the tax court to advise the district court as to the need for the grand jury transcripts, and for the district court to then determine whether there is sufficient particularized need. This procedure allows each court to evaluate that aspect of the disclosure determination which it is most competent to consider, and the ruling court has the benefit of the other court's suggestions. It thus avoids the uninformed unilateral decision-making that *Douglas Oil Co.* precludes.

The Third Circuit recently faced an analogous situation. In *In re Grand Jury Proceedings (Wright) & (Wright II)*, the district court ordered a state court judge to meet with the United States attorney for the purpose of determining which grand jury materials might be relevant to the defense in a criminal proceeding pending before the state court judge. The Third Circuit found that the procedure which the district court adopted—consultation with the state court but retention by the district judge of final responsibility for the disclosure decision—was an acceptable alternative. In reaching this conclusion, the Third Circuit noted the uncertainties surrounding a state court's power to direct release of materials in the custody of a federal grand jury. The court emphasized the federal decision-making role that the Federal Rules arguably mandate. *See, e.g., Special Feb-*

*ruary 1971 Grand Jury v. Conlisk,* 490 F.2d 894 (7th Cir. 1973) (disclosure decision made by federal court); *Doe v. Rosenberry,* 255 F.2d 118 (2d Cir. 1958).

## VI. *Conclusion*

For the foregoing reasons, we affirm the district court's finding that disclosure of the Miller grand jury materials is proper for use in the tax court litigation. With respect to the grand jury transcripts that the government requested, however, we reverse and remand to the supervisory district court. The grand jury court is in the best position to devise a transfer procedure which is both consistent with this opinion and which will aid the tax court in the pending litigation.